MARQUITA RAMIREZ-BARKER v. ALLEN MALLOY BARKER

No. 9115DC723

(Filed 21 July 1992)

1. **Divorce and Separation § 359 (NCI4th)— modification of child custody order**
   Once the custody of a minor child is judicially determined, the order of the court cannot be altered until it is determined that (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the best interest of the child.

   **Am Jur 2d, Divorce and Separation §§ 997 et seq.**

2. **Divorce and Separation § 365 (NCI4th)— modification of child custody—change in custodial parent's residence**
   A change in a custodial parent's residence is not itself a substantial change in circumstances justifying a modification of a custody decree. If, however, the relocation is detrimental to the child's welfare, the change in residence of the custodial parent is a substantial change in circumstances and supports a modification of custody.

   **Am Jur 2d, Divorce and Separation § 1011.**

3. **Divorce and Separation § 365 (NCI4th)— modification of child custody—change in custodial parent's residence**
   If there is competent evidence that a proposed relocation of the custodial parent's residence will likely or probably adversely affect the welfare of the child, this evidence will support, in the event the move occurs, a finding of changed

RAMIREZ-BARKER v. BARKER

[107 N.C. App. 71 (1992)]

circumstances, which would then necessitate a "best interest" analysis. If the evidence does not reveal any likely or probable adverse effect on the welfare of the child, the relocation of the child must be allowed and the noncustodial parent's visitation privileges modified.

**Am Jur 2d, Divorce and Separation § 1011.**

4. **Divorce and Separation § 365 (NCI4th) — change in custodial parent's residence — adverse effect on child's welfare**

The noncustodial father met his burden of showing that the proposed relocation of the mother and child to California would likely adversely affect the welfare of the child where there was evidence to support the trial court's finding that the child needed the input of both parents to the degree provided by the present custody-visitation arrangement because of the close relationship of the child with each parent and the "severe problems" of both parents.

**Am Jur 2d, Divorce and Separation § 1011.**

5. **Divorce and Separation § 365 (NCI4th) — change in custodial parent's residence — best interest of child — factors considered**

In exercising its discretion in determining the best interest of the child in a relocation case, factors appropriately considered by the trial court include, but are not limited to, the advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the North Carolina courts; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent. The trial court did not abuse its discretion in this case in concluding that the proposed move of the mother and child to California was not in the best interest of the child.

**Am Jur 2d, Divorce and Separation § 1011.**

APPEAL by plaintiff from order entered 7 February 1991 in ORANGE County District Court by *Judge Stanley Peele*. Heard in the Court of Appeals 13 May 1992.

RAMIREZ-BARKER v. BARKER

[107 N.C. App. 71 (1992)]

*Levine, Stewart & Davis, by Donna Ambler Davis, for plaintiff-appellant.*

*Lunsford Long for defendant-appellee.*

GREENE, Judge.

Plaintiff Marquita Ramirez-Barker (Mother) appeals from an order of the trial court filed 8 February 1991 denying her request for modification of child visitation privileges established in a court order filed 6 February 1988.

Mother and defendant, Allen Malloy Barker (Father), were married in 1975 and on 25 July 1979 their only child was born. In 1987 the parents separated. In the February 1988 order, the trial court granted sole and permanent custody of the child to Mother with extended visitation privileges to Father. The visitation periods included every other weekend, the child's birthday, major holidays on a rotating basis, every Wednesday evening after school until Thursday morning, and the summer vacation period. During the summer vacation period, Mother was entitled to visitation for two consecutive weeks and every other weekend. The order also provided for the method of transfer of custody. Father was to obtain the child from school and Mother was to obtain the child at Father's residence. Finally, the order required Mother to give Father sixty days notice of her intention to move from the Chapel Hill area.

Mother currently lives in Chapel Hill, where she is the head nurse of the Child's Psychiatric Institute at John Umstead Hospital in Butner, North Carolina. Father lives in Carrboro and is retired from the military. He is presently unemployed.

On 12 December 1990, Mother filed a motion requesting a change in the visitation schedule. In the motion, she alleged that she desired to move to California so that she and the child could be "close to where numerous members of [her] immediate family reside . . . [and that the move] would make the current visitation schedule . . . unreasonable." In response to this motion, Father, on 3 January 1991, filed a motion for change of custody. In this motion, Father requested that he be granted custody of the child or "in the alternative, for an Order preventing [Mother] from moving the minor child out of the State of North Carolina."

The motions were heard by District Judge Stanley Peele. The child was eleven years of age at the time of the hearing. Both parties testified and the trial judge talked with the child. Mother testified in part as follows:

Q. Could you tell the Court why you want to move?

A. For a number of reasons. Primarily, that's where—that's my home, that's where my family is. I want to do it not only for myself—I need to do it for myself, but as well as for [my child] and to give her the experience related to being with extended family.

Q. Okay. And what extended family will [the child] have in California or does she have in California at this time?

A. She has numerous cousins—first cousins right around her age, uncles and aunts, of course, my brothers and sisters, grandparents, grandfather and grandmother and a great—her great grandfather is also there.

Q. You said that there are numerous cousins around her own age. About how many cousins are we talking about?

A. I would say about nine cousins, boys and girls.

Q. Okay. And does she have a relationship with any of these people now? Does she know her aunts and uncles and grandparents?

A. She knows all of them.

Father testified in part that there existed extended family in North Carolina. Specifically, that he had three children by a previous marriage, now each in their early thirties. He testified that the child has a relationship with her two half-sisters and half-brother, especially his daughter who has a small child.

Other evidence reveals that the child was born in North Carolina and lived, before the separation, in the house now occupied by Father. The child has always attended the local public schools. At the time of the hearing, the child was "getting along well with students and with the teachers." The child expressed no preference with regard to the proposed move to California and expressed satisfaction with the current custody and visitation schedule. William B. Scarborough, a licensed practicing psychologist, performed a psychological evaluation on the child and interviewed both parents.

RAMIREZ-BARKER v. BARKER

[107 N.C. App. 71 (1992)]

He was qualified and accepted by the court as an expert in the "field of children and family psychology." He testified in relevant part as follows:

Q. In your opinion . . . based on your interactions with [the child] will [the child's] welfare be adversely affected if she moves to California with the mother?

A. The term "adversely affect" is difficult. I don't—for instance, children move all the time and single families or children of single parents move all the time and we have no scientific evidence that those moves are—produce severe, severe problems in children. So I would have to answer adversely, probably not. It will be a difficult move . . . . [The child] will miss things. She also will have new opportunities. So, you know, it will be difficult. But I do not believe that it would adversely affect her to the point that there would be long lasting psychological harm.

. . . .

Q. And if [the child] were to remain in North Carolina with the father during the school year and she were to visit with her mother in California in the summertime . . . do you think that would have . . . an adverse effect on [the child]?

A. . . . I think the situation that we have now works, it works well with [the child] being primarily with her mother. That seems to work but I do not have any evidence about what nine months with her father would be like.

. . . .

Q. . . . It certainly would not be your opinion to recommend that a move was necessary for her best interest, would it Dr. Scarborough?

A. No, it would not. All things being equal and nothing— nobody wanting to change, to move her or have her stay, I would not just recommend that, you know, out of the blue, a move, no.

The trial court made the following pertinent findings of fact:

7. There is no showing that the mother's attempt to reunite with her family would necessarily have a positive impact on

the child as compared with the present situation and her relationship with her father and her relatives through him.

9. . . . These two parents have an abiding dislike for each other, have submitted to the court numerous times as to different conflicts, do not get along together, will not and cannot communicate together. Each of these parents has some very serious problems, the father does not realize he has problems, does not appear to be able to learn; however, his love for the child is such that the relationship between the two of them is extremely strong and his love for her causes him to make some good decisions about her and his conduct around her; and he clearly is invested in the child. The mother is taking better steps, she is getting counselling and trying to deal with some of her problems that way and is much more open to change and will be more honest in admitting her faults. She also has serious problems still, however, her condition has improved from her condition at the last hearing. At each hearing she appears to be stronger.

10. Therefore this child continues as in the last hearing to need the input of both the parents, and the present situation allows that to happen. . . . The child appears to be prospering under this arrangement.

11. Although the mother is making a sincere statement about her desires to see her relatives, there is no showing that this desire would be beneficial to the child.

12. . . . The child has a close bonding with the father, there are numbers of things in the household, including the animals, friends that are beneficial to her here, the school system is good, she is getting along well with students and with teachers and this may not continue in California.

15. Both of these parents have severe problems; and the miracle is that each parent is able to give this child good and positive things; and that each parent is able to help create a total environment where the activities of [the child] are balanced. Therefore if you lessen the impact of either parent, that will create an inbalance [sic] in the life of [the child].

Neither party argues that these findings are not supported by the evidence. The trial court concluded that it was not in the best interest of the child "to be uprooted from the present situation

RAMIREZ-BARKER v. BARKER

[107 N.C. App. 71 (1992)]

in which she is blossoming." Based on this conclusion, the trial court entered the following order:

> NOW, THEREFORE, it is ORDERED that if the mother stays in Orange County, that the permanent custody order in this matter stay in force and effect without any change. If the mother decides to move to California, then at the time she moves to California, the custody arrangement shall change as follows: custody will then be joint custody with the situation reversed, that is the mother to have custody during the summer months and the father to have custody during the school year. However, as of the last day of school of 1993, full and complete custody of [the child] shall be awarded to or continued in the mother and she will be allowed to move or [to do] as she sees fit without coming back to court . . . subject however to summer visitation with the father. The proviso that the mother give the father sixty days notice of her intent to move remains in place.

The issue is whether a parent having sole and permanent custody of a child pursuant to a court order may relocate with the child to another area when the resulting interference with the noncustodial parent's visitation privileges will be detrimental to the child.

[1] Once the custody of a minor child is judicially determined, that order of the court cannot be altered until it is determined that (1) there has been a substantial change in circumstances affecting the welfare of the child, *Hamilton v. Hamilton*, 93 N.C. App. 639, 647, 379 S.E.2d 93, 97 (1989); N.C.G.S. § 50-13.7(a) (1987); and (2) a change in custody is in the best interest of the child. *Thomas v. Thomas*, 259 N.C. 461, 467, 130 S.E.2d 871, 875 (1963) (change in circumstances empowers trial judge to modify previous order of custody, if "deemed necessary . . . to further the welfare of the children"). If the party with the burden of proof does not show that there has been a substantial change in circumstances, the "best interest" question is not reached. *Black v. Black*, 560 P.2d 800, 801 (Ariz. 1977). In order for a change in circumstances to be substantial, "it must be shown that circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified." *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E.2d 140, 144 (1969); *Pritchard v.*

RAMIREZ-BARKER v. BARKER

[107 N.C. App. 71 (1992)]

*Pritchard*, 45 N.C. App. 189, 195, 262 S.E.2d 836, 839 (1980); *Wehlau v. Witek*, 75 N.C. App. 596, 599, 331 S.E.2d 223, 225 (1985); *Perdue v. Perdue*, 76 N.C. App. 600, 601, 334 S.E.2d 86, 87 (1985); *Gordon v. Gordon*, 46 N.C. App. 495, 499, 265 S.E.2d 425, 428 (1980); *Searl v. Searl*, 34 N.C. App. 583, 587, 239 S.E.2d 305, 308 (1977); *Spence v. Durham*, 283 N.C. 671, 687, 198 S.E.2d 537, 545 (1973), *cert. denied sub nom. Spence v. Spence*, 415 U.S. 918, 39 L.Ed.2d 473 (1974). The party seeking modification has the burden of showing the necessary change in circumstances. *Crosby v. Crosby*, 272 N.C. 235, 237, 158 S.E.2d 77, 79 (1967). However, there is no burden of proof on either party on the "best interest" question. *Cf. In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (in dispositional hearings for abused and neglected children, neither parents nor Department of Social Services have burden of proving best interest of child). Although the parties have an obligation to provide the court with any pertinent evidence relating to the "best interest" question, the trial court has the ultimate responsibility of requiring production of any evidence that may be competent and relevant on the issue. The "best interest" question is thus more inquisitorial in nature than adversarial.

It is not necessary that adverse effects on the child manifest themselves before a court can alter custody. *See Perdue*, 76 N.C. App. at 601, 334 S.E.2d at 87 (permitting change in custody where evidence showed that child "will be adversely affected if custody is not changed"). It is sufficient if the changed circumstances show that the child will likely or probably be adversely affected. *See* Uniform Marriage and Divorce Act § 409(b)(3), 9A U.L.A. 628 (1987) (child must be seriously endangered before modification allowed). It is neither "necessary nor desirable to wait until the child is actually harmed to make a change" in custody. *Domigues v. Johnson*, 593 A.2d 1133, 1139 (Md. 1991). However, evidence of "speculation or conjecture that a detrimental change may take place sometime in the future" will not support a change in custody. *Wehlau*, 75 N.C. App. at 599, 331 S.E.2d at 225.

[2, 3] Turning to the specific question before us, a change in a custodial parent's residence is not itself a substantial change in circumstances justifying a modification of a custody decree. *Gordon*, 46 N.C. App. at 500, 265 S.E.2d at 428; *Kelly v. Kelly*, 77 N.C. App. 632, 636, 335 S.E.2d 780, 783 (1985); *O'Briant v. O'Briant*, 70 N.C. App. 360, 370, 320 S.E.2d 277, 284 (1984), *rev'd on other grounds*, 313 N.C. 432, 329 S.E.2d 370 (1985); *Searl*, 34 N.C. App.

at 587, 239 S.E.2d at 308. If, however, the relocation is detrimental to the child's welfare, the change in residence of the custodial parent is a substantial change in circumstances and supports a modification of custody. *Gordon*, 46 N.C. App. at 500, 265 S.E.2d at 428. Likewise, if there is competent evidence that a proposed relocation of the custodial parent's residence will likely or probably adversely affect the welfare of the child, this evidence will support, in the event the move occurs, a finding of changed circumstances, which would then necessitate a "best interest" analysis. If, however, the evidence does not reveal any likely or probable adverse effect on the welfare of the child, the relocation of the child must be allowed and the visitation privileges modified.

### ADVERSE EFFECT

[4] In the present case, the trial court found that because of the close relationship between Father and the child and the close relationship between Mother and the child, and because of the "severe problems" of both parents, that the child needed the input of both parents to the degree provided by the current custody-visitation arrangement and that any change in that arrangement would be detrimental to the child. Although there is evidence to the contrary in the record, there is some competent evidence to support this finding and this Court is bound thereby. *Crosby*, 272 N.C. at 238, 158 S.E.2d at 80. Accordingly, Father has met his burden of showing that the proposed relocation of Mother and child to California would likely adversely affect the welfare of the child, and thus the "best interest" question was properly before the trial court.

We note that although it is not so as a matter of law, it will be a rare case where the child will not be adversely affected when a relocation of the custodial parent and child requires substantial alteration of a successful custody-visitation arrangement in which both parents have substantial contact with the child.

### BEST INTEREST

[5] The trial court concluded that the proposed move of Mother and child to California was not in the best interest of the child. In making the best interest decision, the trial court is vested with broad discretion and can be reversed only upon a showing of abuse of discretion. *In re Custody of Peal*, 305 N.C. 640, 645-46, 290 S.E.2d 664, 667 (1982). In exercising its discretion in determining

the best interest of the child in a relocation case, factors appropriately considered by the trial court include but are not limited to: the advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the non-custodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent. *See generally, D'Onofrio v. D'Onofrio*, 365 A.2d 27, 30 (N.J. Super. 1976). Although most relocations will present both advantages and disadvantages for the child, when the disadvantages are outweighed by the advantages, as determined and weighed by the trial court, the trial court is well within its discretion to permit the relocation.

The trial court has the unique opportunity to see and hear the parties, the witnesses, and the child. Although reasonable persons presented with the very difficult issue before the trial court could disagree, we are unable to say that the trial court abused its discretion.

Affirmed.

Judges PARKER and COZORT concur.