[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is before the court on contravening notions relating to the plaintiff's plan to relocate from Wellesley, Massachusetts to Miami, Florida.
The parties were intermarried on September 21, 1985 and divorced in this Court on August 2, 1991. A minor child Lauren Miggins, date of birth August 17, 1988, is issue of this marriage.
The original dissolution judgment provided for joint legal custody and a shared parenting plan. The plan provided for what was essentially a 50/50 shared arrangement.
The plaintiff planned to relocate from Connecticut to Wellesley, Massachusetts in order to remarry. The parties by agreement and court order of December 10, 1992 modified their judgment and shared parenting plan effective August 1, 1993. The modification provided primary residence of the minor child with the plaintiff during the school year and with the defendant during summer vacations. The defendant received very liberal visitation including three out of five weekends, summers, regular evening visits and holidays. CT Page 5118-XXX
The agreement specifically provided that it was reached in contemplation of the plaintiff not working or working limited hours in order to be available for the child.
The initial agreement and modification were entered into with the assistance of Dr. James Black, an expert child psychiatrist. The Court interprets the December 10, 1992 Order as joint custody with the plaintiff as primary custodial parent.
The plaintiff had a child in September of 1995 with her current husband. The plaintiff's husband is a very successful business consultant with a top firm, the Boston Consulting Group. He is trilingual in English, Spanish and Portuguese. His business future requires his relocation to Miami, so that he can cover South America. Currently he is away from his family and in Miami most weeks.
The plaintiff's proposed relocation is to allow for more family time together and to allow her husband to pursue his promising career out of a Miami office. The plaintiff would continue to be at home with her two daughters.
Dr. Black, the court-appointed expert, concluded that the best interests of the child would be served by the child remaining with her mother. He concluded that a choice between Connecticut and Florida should be resolved in favor of the child remaining with the plaintiff mother.
The defendant father was described by Dr. Black as peerless as a father. The mother's full time availability and intact family unit apparently directed the recommendation. Dr. Black felt the move would not adversely impact the psychological health and well-being of the minor child. In the expert's opinion, the best interest of the child would not be affected by the move. (Plaintiff's Exhibit A).
The defendant prefers the status quo; and offers a sincere proposal for a change of primary residency, as an alternative to plaintiff's move of the child to Florida.
The child's attorney reported the child's preference for the status quo, and strongly advocated the retention of the status quo. If forced to choose between the Florida relocation and placement with the defendant, the child's CT Page 5118-YYY counsel urged placement with plaintiff; though acknowledging the defendant's parental qualities.
The best interest of the child is the standard for the Court to apply in addressing this custody dispute. C.G.S. § 46b-56(b). ". . . the Court shall be guided by the best interests of the child, giving consideration to the wishes of the child if [she] is of sufficient age and capable of forming an intelligent preference . . .".
In evaluating the custody and visitation issues Dr. Black found that Lauren's best interests were served by being in the primary custody of her mother during the school year. (Exhibit A.) Dr. Black is of the belief that the child's best interest is a psychological determination; and that the location of the child in Massachusetts or Florida was not relevant to the psychological well-being or best interest of the child. Dr. Black distinguished between the psychological and emotional impact of relocation. The relocation would likely have a transitory emotional impact on the child, but not a psychological impact.
The caveat to this opinion was a continued "rich" or liberal visitation schedule of the defendant father.
The Court accepts the expert opinion that the child's best interest is served by the mother's having primary residential custody during the school year, with the father having a very liberal visitation schedule.
The defendant and child's attorney advocate that the Court go beyond the best interest custodial/visitation analysis between the parties; and compel the plaintiff to preserve the status quo.
In Connecticut there is an absence of controlling authority on the issue of post judgment relocation or "move away" cases.
A line of cases which do not involve joint custody establish that visitation rights do not prevent the custodial parent from removing a child from the state. Presutti v.Presutti, 181 Conn. 622 at 630 (1980); Raymond v. Raymond,165 Conn. 735, 740 (1974), and Bozzi v. Bozzi, 177 Conn. 232
(1979). CT Page 5118-ZZZ
In Blake v. Blake, 207 Conn. 217 (1988) relocation of minor children in a dissolution case was addressed; but in the context of an original dissolution judgment. Blake is significant in discussing the impact of joint custody on child relocation issues and recognizing the distinction between original judgment and post-judgment relocation issues.
A Superior Court decision addresses this specific issue in Zakar v. Ireland, #87593 Middletown, Stanley, J., February 7, 1996.
In that decision the Court in preventing the relocation noted:
 This Court concludes that relocation must be viewed on a case by case basis with attention to any manifestations of what was contemplated by the parties and the Court at the time the original orders were entered. [T]he impact the relocation will have on the minor child, the history of the relocating parent and the minor child, the Family Relations Report and the reasons offered by the relocating parent for the move. Additionally the burden of establishing the benefits of the move must rest with the relocating parent. Underlying all of these factors is the premise that the Court must base its decision on what is in the best interest of the minor child.
Authority from other jurisdictions suggests a recognition of the necessity for a case by case factual approach to determine the best interest issue raised by relocation, but a definite move to reduce or remove the burden on the relocating parent or presumptions as to the impact of moves. Also, a broader view of the interest of the primary custodial family is generally accepted.
New York had developed a three-step analysis of relocation cases. Lake v. Lake, 596 N.Y.S.2d 3422 (App.Div. 199 1) and Rybicki v. Rybicki, 575 N.Y.S.2d 341 (App.Div. 199 1). This analysis involved an initial determination of CT Page 5118-AAAA whether the proposed relocation would deprive the non-custodial parent of "regular and meaningful access to the child." Where a disruption is not found, the inquiry would usually end without an assessment of the motives for the move. If a disruption was established, a presumption that the move is not in the child's best interest is invoked and the custodial parent seeking to relocate must prove exceptional circumstances to justify the move.
In Tropea v. Tropea, ___ N.Y.S.2d ___ USLA April 2, 1996, New York Law Journal, February 7, 1996, the New York Court of Appeals criticized and rejected the meaningful access/presumption/exceptional circumstances tests.
The New York law now allows trial courts, free of presumptions, to determine the best interests of the child in "move-away" cases by weighing all relevant factors, including each parent's motivation, quality of relationship, impact of move on non-custodial parent's future contact with child, degree to which the non-custodial parent's and child's life will be enhanced, economically, emotionally, and educationally, by the move, and feasibility of preserving the non-custodial parent's relationship through suitable visitation arrangement.
The California Supreme Court has similarly changed course by its decisions In re Marriage of Burgess, 913 P.2d 473, Cal Rptr.2d 444 (April 15, 1996).
Burgess dealt with an initial custody relocation but the Court at the urging of amicus parties addressed post-judgment relocations. The California Supreme Court reversed a line of cases which had in joint custody cases required a relocating custodial parent to prove the intended relocation as "necessary." In so doing, the Court recognized at 913 P.2d 480.
"As this case demonstrates, ours is an increasingly mobile society. Amicus curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs of both parents after a marital dissolution to secure or retain employment, pursue education or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the CT Page 5118-BBBB same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimizing costly litigation over custody and require the trial courts to "micromanage" family decision-making by second guessing reasons for every day decisions about career and family.
The California Court went on to hold that `in the absence of express statutory language' there is no burden on a parent seeking to relocate with a child to establish `necessity.' This applies in post-judgment as well as initial orders.
The California Court expressly noted that it is entirely inappropriate to impose on the relocating custodial parent the burden applicable to a motion for change of custody.
The burden in a change of custody modification must be considered when fashioning orders directed at preserving the status quo. Testing the parental attachment by conditioning custody on specific location would hardly seem a policy coincident with the child's best interest. Family Court Judges should be reluctant to assume the role of King Solomon with the biblical custody dispute in confronting divorced parents.
While it is true that California like other states has a different statutory and case law basis underlying its family law cases; the treatment of policy consideration and the social concerns inherent in post-divorce custodial relocations is instructive.
A line of authority from other states has followed a seminal New Jersey relocation case D'Onofrio v. D'Onofrio,144 N.J. Super. 200, 365 A.2d 27, aff'd 144 N.J. Super. 352,365 A.2d 716 (App.Div. 1976).
D'Onofrio is important for framing the full context of the best interest of the child standard in relocation cases.
"The children after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interest of the CT Page 5118-CCCC children. It is in the context of what is best for that family unit that the precise nature and times of visitation and changes in visitation by the noncustodial parent must be considered." D'Onofrio, 365 A.2d 29-30.
Thus the focus on the best interest of the child necessarily includes the circumstances of the custodial family unit. Similarly, D'Onofrio goes on to clarify the non-custodial parental role in the determination of best interest:
 "Where the residence of the new family unit and that of the non-custodial parent are geographically close, some variation of visitation on a weekly basis is traditionally viewed as being most consistent with maintaining the parental relationship and where, as here, that has been the visitation pattern, a court should be loathe to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons . . ., the court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable lifestyle for the [custodial parent] and children be forfeited solely to maintain weekly visitation by the [non-custodial parent] where reasonable alternative visitation is available and where the advantages of the move are substantial." D'Onofrio, 365 A.2d at 30.
The D'Onofrio decision articulated criteria for the court to consider in resolving the competing interests presented in relocation cases. The criteria are as follows: (1) advantages of move in terms of its likely capacity to improve the general quality of life for the custodial parent and child; (2) motivation or good faith of custodial parent in desiring relocation, is interference in non-custodial parent's visitation or relationship, a factor in move; (3) likelihood of custodial parent to comply with visitation orders necessitated by relocation; (4) good faith or motivation of non-custodial parent in resisting relocation, and (5) whether, if relocation is allowed, there is a realistic opportunity for visitation schedule which will provide an adequate basis for preserving and fostering the parental relationship with the non-custodial parent. Cooper v. Cooper, 99 N.J. 42,491 A.2d 606 (1984). CT Page 5118-DDDD
The D'Onofrio criteria have been followed in numerous additional jurisdictions. Bachman v. Bachman, 539 So.2d 1182
(Fla. 4th Dist.Ct.App. 1989); Matilla v. Matilla, 474 So.2d 306
(Fla. 3rd Dist.Ct.App. 1985); Yannos v. Frondistau-Yannos;395 Mass. 704, 481 N.E.2d 1153 (1985); Hale v. Hale,12 Mass. App. 812, 429 N.E.2d 340 (1981); Anderson v.Anderson, 170 Mich. App. 305, 427 N.W.2d 627 (1988); Bielowskiv. Bielowski, 137 Mich. App. 587, 358 N.W.2d 383 (1984);Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991);Ramirez-Barker v. Barker, 107 N.C. App. 71, 418 S.E.2d 675
(1992); Fortin v. Fortin, 500 N.W.2d 229 (S.D. 1993); Taylorv. Taylor, 849 S.W.2d 319 (Tenn. 1993); Lane v. Schenk,158 Vt. 489, 614 A.2d 786 (1992); Laue v. Laue, 851 P.2d 1283
(Wyo. 1993) and Staab v. Hurst, 868 S.W.2d 517 (Ark.App. 1994).
D'Onofrio was adopted in New Jersey where by statute children cannot be removed from the jurisdiction without the consent of the non-custodial parent ". . . unless the court, upon good cause shown, shall otherwise order." N.J. S.A. 9:2-2. In the Arkansas and Florida decisions it was followed even in absence of any similar statute. See Bachman v.Bachman, 539 So.2d 1182, and Staab v. Hurst,868 S.W.2d at 520.
The Court finds that the analysis approach and criteria adopted in D'Onofrio are persuasive as policy and helpful in application.
The Court does not read the Connecticut statutory preference for joint custody orders C.G.S. § 46b-56a and for joint decision-making pursuant to joint custody orders C.G.S. § 46b-56a to impose any greater burden on a relocating primary custodial parent then ascribed by D'Onofrio. A demonstration that the relocation will result in a real advantage to the primary custodial family unit.
The facts of this case will be analyzed in accordance with the D'Onofrio criteria. The advantages to the primary custodial parent likely to result from the relocation include: a substantial increase of family time with her current husband; a substantially more secure career for plaintiff's current husband and concomitant financial benefits to the primary custodial family unit and a likelihood that the Miami CT Page 5118-EEEE area will be a more permanent home for plaintiff's family unit. The financial security and benefit will continue to allow the primary custodial parent to have the luxury of remaining at home with her children. The relocation has a substantial benefit to the primary custodial family unit, though it is not necessary. Plaintiff's husband without the relocation would retain his employment and would anticipate employment opportunities which would allow him to continue to support his family.
The Court finds that the plaintiff's relocation is not in any way motivated by a desire to interfere with defendant's relationship with his daughter. Plaintiff and her new husband value the close relationship between defendant and his child. Plaintiff made extraordinary efforts to facilitate the existing visitation schedule. The plaintiff's offer of a continuation of the existing visitation schedule; to accompany her daughter on flights for the first year; to provide an 800 number for the defendant to telephone his child and to house the defendant in Florida during visits evidence good faith on behalf of the plaintiff.
Similarly, the defendant is sincerely motivated in his opposition to the relocation. The evidence amply supported Dr. Black's description of defendant as "peerless" as a father. Defendant has a very close, positive and ideal relationship with his daughter. He is understandably defensive as to any incursions on his access to his child. Defendant initially had shared custody and has always maintained essentially daily contact with his child.
The plaintiff, defendant and their respective nuclear and extended families are exemplars of mature adult concern and caring for Lauren. The history of this case demonstrated exceptional good faith in facilitating a very extensive visitation schedule. The Court anticipates continued full compliance by the primary custodian parent with visitation orders. The primary custodial parent through her new husband has substantial financial means which would permit the assumption of financial consequences for any relocation.
Finally, the critical evidence of whether, if relocation is allowed, there is a realistic opportunity for a visitation schedule which will provide an adequate basis for preserving and fostering the defendant-father's parental relationship CT Page 5118-FFFF with his daughter.
Dr. Black suggests a "rich" visitation schedule of at least one weekend a month in Connecticut (which would include any three-day holiday weekends); the school vacations during the school year and some Christmas holiday time in Connecticut; some alternating holidays as well as the summer vacation primarily in Connecticut. It is also proposed that the plaintiff will provide an "800" telephone number, in order that defendant have telephone contact without charge. In addition, the defendant would have reasonable visitation access if he were in Florida.
Dr. Black also suggests weekly communication from plaintiff to defendant concerning Lauren's activities. Finally, Dr. Black suggests that the plaintiff be compelled to communicate with the defendant regarding general issues of Lauren's medical care, educational programming and religious training.
The Court concludes that there is a realistic opportunity if the relocation occurs for a visitation schedule which will provide an adequate basis for preserving and fostering Mr. Miggins parental relationship.
Connecticut law also requires the Court to consider the child's wishes where as here the child articulates an intelligent preference. C.G.S. § 46b-56a. Lauren, through her attorney, has professed a desire to maintain the status quo. It is an understandable desire, but is difficult if not impossible to accomplish. Few children would choose to sacrifice the comforts of the existing location for the uncertainties of a new home and school.
The D'Onofrio criteria suggest that the relocation is for sincere career and family interests of the primary custodial family unit. The parties are in good faith advocating their positions relative to the relocation; and recognize their respective parental interests in their child. There is likelihood that with the relocation an adequate visitation schedule can be constructed and carried out.
Notwithstanding the child's preference to preserve the status quo; the Court declines to interfere with the primary custodial family's reasonable good faith relocation desires; CT Page 5118-GGGG where an adequate visitation schedule can be implemented to preserve and foster the non-custodial parent's relationship to his child.
The plaintiff's motion to permit relocation is granted. The defendant's motion for change of custody is denied.
The parties are encouraged to develop a visitation schedule which would contain the following elements:
Plaintiff by "800" number or other means assumes the defendant's cost of telephone communication with the child.
Defendant to have visitation, in Connecticut no less than once a month to include three-day weekends.
Plaintiff transports the child for at least the first four months. The continued need for an escort for the child to be determined by the child's experience.
Defendant to continue to have primary custodial access during the school summer vacation, with no less than one week vacation with plaintiff.
The defendant to have visitation in Connecticut for school year vacations, part of Christmas vacation and some alternating holidays.
Plaintiff assume entire cost of child's transportation and pay the round trip air fare of defendant for one annual visit in Florida, at which time the defendant will have reasonable access and visitation.
If the parties are unable to agree on a detailed visitation schedule by August 7, 1996, the Court will enter a detailed visitation schedule.
McWeeny, J.