An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1067

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

MARK W. ANDREWS,
        Plaintiff,

v.                                    Wake County
                                      No. 08 CVD 15341
JENNIFER M. PARRISH,
        Defendant.


Appeal by defendant from orders entered 11 January 2010, 27 September 2010, 2 December 2011, 10 January 2012, and 27 December 2012 by Judge Anna E. Worley in Wake County District Court. Heard in the Court of Appeals 19 February 2014.


*No brief filed on behalf of plaintiff-appellee.*

*Schiller & Schiller, PLLC, by David G. Schiller, for defendant-appellant.*


GEER, Judge.


Defendant Jennifer M. Parrish appeals from the trial court's Permanent Custody Order, granting joint legal custody of the parties' minor child "Lisa" to defendant and plaintiff Mark

W. Andrews and primary physical custody to plaintiff.[1] Defendant's arguments on appeal are founded almost entirely on defendant's contention that the trial court should have found her evidence more credible than that of plaintiff. Because we may not reweigh the evidence on appeal and the trial court's findings of fact are binding if supported by competent evidence, we affirm.

## Facts

Plaintiff and defendant maintained a romantic relationship and briefly lived together in 2005, but never married. After their relationship ended, plaintiff moved to Texas for work-related reasons. Their daughter Lisa was born on 28 August 2006. Plaintiff was initially skeptical that Lisa was his daughter, but as soon as a paternity test established that he was the father, he consistently sought a relationship with Lisa, travelling from Texas to North Carolina to visit her.

Plaintiff filed for custody on 29 August 2008. On 13 January 2009, a temporary custody order was issued granting joint legal custody and primary physical custody to defendant, although the order provided a weekly visitation schedule for

---

[1]For ease of reading and to protect the identity of the minor child, we use the pseudonym "Lisa" throughout this opinion.

plaintiff. Six months later, in June 2009, defendant and Lisa moved to Ohio due to a death in defendant's family.

On 11 January 2010, when Lisa was three years old, a temporary custody order established a visitation schedule in which Lisa would spend alternative periods of four weeks with defendant in Ohio and four weeks with plaintiff in North Carolina. Defendant was subsequently held in contempt of that order, in an order entered 10 January 2011, for failing to return Lisa to plaintiff on 6 August 2010.

In November 2011, plaintiff contacted the Superintendent of Lisa's elementary school in Ohio to express concerns about Lisa's school attendance, her education, and transition issues. In response to those concerns, Lisa began seeing a therapist, Katie Niemezura. During a therapy session that took place at defendant's home in Ohio on 25 November 2011, Lisa told Ms. Niemezura that plaintiff had touched her genital area during bath time. Around the same time, defendant learned from the mother of another minor child that the two children had engaged in sexually inappropriate behavior with one another while playing dress up. Sally McHugh, a social worker from the Cuyahoga County Child Protection Services, interviewed Lisa on 29 November 2011 regarding the sexual abuse allegations and found her to be credible.

On 30 November 2011, an order was entered granting defendant's motion for an ex parte emergency temporary custody order based on allegations that plaintiff had sexually abused Lisa. An interim temporary custody order was entered 2 December 2011, and an emergency temporary custody order was entered 10 January 2012. The orders provided that Lisa would reside with plaintiff's mother when she returned to North Carolina and that she would not be left alone with plaintiff or with any males over the age of 10.

On 30 January 2012, Johnston County Department of Social Services ("Johnston County DSS") filed a juvenile petition in Johnston County district court alleging that Lisa had been sexually abused by plaintiff. After numerous hearings, the district court entered a juvenile adjudication order on 13 June 2012 dismissing the petition. The order contained 48 findings of fact reciting the nature of the sexual abuse allegations and summarizing the testimony and evidence presented at the hearings.

Although the trial court found that "the evidence presented suggests that [Lisa] has age-inappropriate sexual knowledge and it hints strongly that she may have been sexually abused[,]" the court also found that the allegations of sexual abuse arose while Lisa was in the physical custody of defendant and after

plaintiff filed a motion to have the custody schedule reviewed. In addition, the court found that Ohio DSS's conclusion that Lisa was more likely than not sexually abused was based on an investigation "which did not include any interviews of the Respondent Father, the father's family, the child's teacher in NC, or any other collaterals involved in the child's life in NC . . . ."

The Johnston County district court agreed with Dr. Robert Aiello's assessment that the four-week custody rotation was not in the best interest of Lisa and had caused her instability and emotional distress and expressed concern that the case had been pending in Wake County for more than four years without any permanent custodial schedule entered. Ultimately, the Johnston County district court found that "[n]otwithstanding the Court's concern that the custodial arrangements established in Wake County are not in the best interests of the child, based on the evidence presented the Court cannot find as a fact that there is clear, cogent, and convincing evidence that the child is abused or neglected and the Petition should be dismissed."

The hearing on permanent custody was held in Wake County district court on 17 and 18 September 2012, and the court entered a Permanent Custody Order on 27 December 2012. Among its 107 findings of fact, the court found that defendant had

failed to show by a greater weight of the evidence that plaintiff sexually abused the child and that both parents are fit and proper parents to exercise legal and physical custody of the minor. However, based in pertinent part upon its findings that Lisa "did extremely well while in school in North Carolina" and that "[i]n the event the minor child were to remain in the State of Ohio in the custody of the Defendant, the Defendant is not likely to promote a healthy and meaningful relationship between the minor child and the Plaintiff[,]" the court concluded that Lisa's best interests would be served by awarding joint legal custody and primary physical custody to plaintiff. Defendant timely appealed the Permanent Custody Order to this Court.

## Discussion

Defendant challenges several of the trial court's findings of fact and argues that the trial court abused its discretion in awarding primary physical custody to plaintiff. Our standard of review is well established:

> "In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by

adequate findings of fact."

*Carpenter v. Carpenter*, ___ N.C. App. ___, ___, 737 S.E.2d 783, 785 (2013) (quoting *Peters v. Pennington*, 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011)).

This Court reviews de novo whether the findings of fact support the trial court's conclusions of law. *Id.* After reviewing the findings of fact and conclusions of law, we review the trial court's determination regarding the best interests of the child for abuse of discretion. *Mason v. Dwinnell*, 190 N.C. App. 209, 230, 660 S.E.2d 58, 71 (2008).

### Findings of Fact and Conclusions of Law

Defendant first argues, citing *Long v. Long*, 160 N.C. App. 664, 588 S.E.2d 1 (2003), that the trial court's findings of fact 28, 31, 34, 37, 48, 60, 61, 62, 63, 83, and 90 are mere recitations of the evidence and are, therefore, inadequate.

"'There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove ultimate facts. . . . An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts . . . .'" *Overcash v. N.C. Dep't of Env't & Natural Res.*, 179 N.C. App. 697, 707-08, 635

S.E.2d 442, 449 (2006) (quoting *Smith v. Smith*, 336 N.C. 575, 579, 444 S.E.2d 420, 422-23 (1994)). Recitations of the evidence may serve as evidentiary facts that lend support or provide context for a trial court's ultimate facts. Accordingly, "[t]here is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes." *In re C.L.C., K.T.R., A.M.R., E.A.R.*, 171 N.C. App. 438, 446, 615 S.E.2d 704, 708 (2005), *aff'd per curiam*, 360 N.C. 475, 628 S.E.2d 760 (2006).

In *Long*, the findings were inadequate because the trial court, by merely reciting the testimony, did not resolve the conflicts in the evidence and actually find facts. 160 N.C. App. at 668, 588 S.E.2d at 3. That is not the case here.

Finding of fact 90 states:

> 90. When the Defendant's son was approximately eight (8) years old, there were allegations concerning the Defendant's son having sexually inappropriate behavior with a four (4) year old cousin. There has been evidence received concerning sexually inappropriate contact and/or play between the minor child herein and her friend, "Maria", while in the Defendant's home. These allegations arose primarily through reports from the minor child, "Marie". These allegations also arose in close connection to the scheduled review hearing in Wake County concerning the

> permanent schedule and concerning the minor child's school schedule for Kindergarten. The timing of these allegations and the nature of the reports coming from a minor child were reflected in the Court's assessment regarding the credibility and the accuracy of the reports concerning the sexually inappropriate contact between the minor child and "Maria".

This finding appropriately recited certain allegations of sexual abuse, but the trial court then resolved the dispute the allegations raised by determining that they were not entitled to much weight. Specifically, given "[t]he timing of these allegations and the nature of the reports coming from a minor child," the trial court questioned the "credibility and the accuracy" of the evidence. In other words, finding of fact 90 explains the trial court's reasoning in deciding what weight to give the evidence addressed in the finding.

Findings of fact 28, 31, 34, 37 and 48 summarize certain behavior and testimony of defendant, findings 60 to 63 summarize defendant's parenting and discipline of her teenage son Gary, and finding 83 summarizes Lisa's Kindergarten teacher's assessment of Lisa's ability to transition to her classroom on the four week custody rotation. These findings are permissible evidentiary findings that offer support for the trial court's ultimate findings of fact found elsewhere in the order.

Defendant next argues, citing *Kerns v. Southern*, 100 N.C. App. 664, 397 S.E.2d 651 (1990), that findings 28, 31, 34, 37, 41, 83, 90, and 102 are impermissibly conclusory. In *Kerns*, the trial court, after finding that the grandparents were fit and proper persons to have the care, custody and control of the minor children, found that it was in the best interest of the children to award visitation rights to the minor children's grandparents. *Id.* at 667, 397 S.E.2d at 652-53. This Court held that "the conclusory statements are inadequate findings to support the award of visitation rights to the grandparents." *Id.*, 397 S.E.2d at 652. In that case, there were no findings of fact to support the trial court's conclusion that the visitation with the grandparents was in the best interests of the child.

Here, defendant attempts to apply the reasoning of *Kerns* to individual findings of fact. In this case, the trial court's order contains 107 findings of fact. As explained above, some of the findings are ultimate findings of fact in which the trial court resolves disputes in the evidence. Such findings are not "impermissibly conclusory" as long as they are adequately supported by competent evidence in the record.

Defendant next argues that "[t]he trial court was bound by the Johnston Order findings of fact on the grounds of issue preclusion and N.C. Gen. Stat. § 7B-200(c)." Because defendant

does not cite any authority in support of this contention, we need not address this issue. *See* N.C.R. App. P. 28(b)(6).

Nevertheless, defendant has not pointed to any findings by the trial court that are inconsistent with the Johnston County order. Although defendant asserts that finding 82 that Lisa's "behavior and performance at McGee's Crossroads Elementary school has been normal and appropriate" and finding 83 that Lisa "adjusted well to her classroom" apart from a few "days of adjustment" are inconsistent with the Johnson County order's finding that Lisa suffered from "[a]djustment disorder with mixed emotional and conduct issues[,]" we do not believe that these findings are necessarily inconsistent with one another. Defendant's argument merely challenges the inferences that the trial court may draw from the evidence. The trial court has the discretion to determine the reasonable inferences to be drawn from the evidence presented. *See In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject.").

Next, defendant argues that the trial court failed to consider facts that were established due to plaintiff's failure

to timely deny admissions that were served upon him pursuant to Rule 36(a) of the Rules of Civil Procedure. "The Comment to G.S. 1A-1, Rule 36 notes that '[i]n form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party.'" *Eury v. N.C. Emp't Sec. Comm'n*, 115 N.C. App. 590, 599, 446 S.E.2d 383, 388 (1994) (quoting N.C.R. Civ. P. 36 cmt.)

> "A judicial admission is a formal concession which is made by a party in the course of litigation for the purpose of withdrawing a particular fact from the realm of dispute. Such an admission is not evidence, but it, instead, serves to remove the admitted fact from the trial by formally conceding its existence."

*Id.*, 446 S.E.2d at 389 (internal citation omitted) (quoting *Outer Banks Contractors, Inc. v. Forbes*, 302 N.C. 599, 604, 276 S.E.2d 375, 379 (1981)).

In this case, the trial court found in its 10 January 2012 interim temporary custody order that plaintiff was properly served with the admissions on 5 October 2011 and failed to respond or object within 30 days. The trial court deemed the admissions conclusively established and incorporated them by reference into the temporary order's findings. Defendant's request for admissions included, in pertinent part, that plaintiff uses corporal punishment on a weekly basis to

discipline Lisa, that plaintiff's primary motivation for pursuing child custody is to disrupt Lisa's relationship with defendant, and that he has significant untreated emotional problems, including borderline personality disorder, narcissistic personality disorder, and anger management problems, that prevent him from being a loving father. In the permanent custody order, entered over one year later, the trial court did not make any findings regarding the admissions.

In *G.R. Little Agency, Inc. v. Jennings*, 88 N.C. App. 107, 112, 362 S.E.2d 807, 811 (1987), this Court addressed a similar argument to the one defendant makes here. In *G.R. Little Agency*, the plaintiff contended that the trial court erred, in a bench trial, in concluding that the defendant was not in a partnership with the defendant's ex-husband. *Id.* at 110, 362 S.E.2d at 810. The plaintiff argued, like defendant in this case, that "the trial court committed prejudicial error by giving only slight weight to matters contained within plaintiff's request for admissions [pursuant to Rule 36], these matters having been deemed admitted by defendant's failure to respond." *Id.* at 111-12, 362 S.E.2d at 811. This Court rejected the plaintiff's argument, explaining:

> Although plaintiff argues that these matters
> [that were deemed admitted] conclusively
> established a partnership, the trial court
> stated at trial that the matters contained

> within the requests did not necessarily make out a *prima facie* case of partnership and elected to assign greater weight to the testimony at trial. The trial court, when sitting as trier of fact, is empowered to assign weight to the evidence presented at trial as it deems appropriate. Moreover, even in the presence of evidence to the contrary, if there is competent evidence to support the trial court's findings and conclusions, the same are binding on appeal. In light of the substantiality of competent evidence adduced at trial suggesting the nonexistence of a partnership, we are not persuaded by this argument.

*Id.* at 112, 362 S.E.2d at 811 (internal citations omitted).

Here, the admissions that one year prior to entry of the permanent custody order plaintiff used corporal punishment to discipline Lisa and had significant emotional issues do not conclusively establish that plaintiff is an unfit parent or that awarding plaintiff custody is not in the best interests of Lisa at the time the permanent custody order was entered. Nor has defendant pointed to any findings that directly contradict the admissions. Indeed, with respect to corporal punishment, the trial court acknowledged in one finding that "there were prior allegations of the Plaintiff using spanking as a form of punishment in the past, and said form of discipline is inappropriate concerning a child who has been the subject of allegations of abuse[,]" but additionally found that plaintiff "testified . . . that he currently successfully disciplines the

minor child primarily through getting on eye level with the minor child and talking with her in a way that [is] appropriate and suitable for a child of her age." The trial court did not err in giving more weight to the evidence of the current state of affairs than to plaintiff's admissions about his mental state and actions prior to 2012.

Turning now to the issue of sexual abuse, defendant argues that the trial court's ultimate finding of fact that "Defendant has failed to show by a greater weight of the evidence that the Plaintiff has abused or neglected the minor child," as well as several of the evidentiary findings upon which this ultimate finding is based, are not supported by competent evidence in the record.

Findings of fact 25, 90, and 97 specifically address the credibility and weight that the trial court attributed to the evidence presented by defendant to support the allegations that plaintiff sexually abused Lisa. As we have already held, finding of fact 90 was a permissible finding that the timing and nature of the allegations of sexual misconduct with another minor child undermined the credibility and accuracy of those reports. Similarly, finding of fact 25 -- that "[t]he reports concerning these behaviors [that the child engaged in sexual exploration with another minor child] and the way that the minor

child was questioned about these behaviors by Social Services in the State of Ohio were leading" -- explains why the trial court attributed little weight to the results of the Ohio investigation.

Defendant argues, however, that finding of fact 25 is not supported by the record. Defendant asserts that a review of an Ohio Activity Report shows that the child was asked open-ended questions during her interview with the Ohio social worker. Defendant, however, has not included the report in the record on appeal. We, therefore, must assume that this finding is supported by the Ohio Activity Report. *See Potts v. Potts*, 19 N.C. App. 193, 194, 198 S.E.2d 203, 204 (1973) ("Where there is evidence offered before the trial court and appellant assigns as error that the evidence does not support the findings of fact by the trial judge, but does not include the evidence in the record on appeal, we will presume the facts found are supported by competent evidence.").

In finding of fact 97, the trial court explains how it interpreted the expert testimony of Dr. Aiello who examined Lisa. The trial court's findings regarding Dr. Aiello are as follows:

> 96. During the course of her interview with Dr. Robert Aiello, the minor child was avoidant. The minor child did deny that her father had touched her

inappropriately and expressed that she did not want to discuss the issue any further. Dr. Aiello testified that if he had had a sex offender evaluation to consider, he would have considered it. Based upon all of the evidence presented to Dr. Aiello, he developed three (3) hypotheses with regard to the allegations of sexual abuse. No other possibilities were examined. There were facts and circumstances to support each hypothesis. The hypotheses were as follows:

a. [the child] was sexually abused in the form of inappropriate sexual touching with her father as the alleged perpetrator;

b. [the child] was not sexually abused. Her statements were the result of family or other influences on the maternal side of this case; and

c. [the child] was sexually abused by Mr. Andrews but is currently recanting her statements because of family or other influences on the paternal side of this case.

97. Dr. Aiello did not know that the State of Ohio had formed their case decision concerning the allegations without ever contacting the Plaintiff. At the time that Dr. Aiello testified to this Court, Dr. Aiello was further not aware that the State of Ohio had changed their case decision from a decision of "indicated" for abuse to "unsubstantiated" for abuse. Based upon Dr. Aiello's involvement and interview of all available witnesses, Dr. Aiello could not render any definitive opinion concerning the likelihood of abuse and indicated that

each of the three (3) hypotheses were possible.

These findings are supported by substantial evidence in the record. Although defendant correctly notes that no document memorializing the Ohio case decision is in the record, Mr. Robert Tarpey, a supervisor with the Child Protective Services Investigation and Assessment Unit at Johnston County DSS, testified without objection that the Ohio case had been overturned because the abuse was unsubstantiated.

Additionally, Dr. Aiello was specifically asked how the Ohio case decision would impact his analysis.

> Q  If the finding of indicated were later changed to unsubstantiated, would that make a difference in the strength, if any, you would give for hypothesis A?
>
> A  That's a difficult question. What that would do is tend to support the other hypotheses. I believe that's the best answer I can give. And in particular, what it would give is support hypothesis B. It could be cited as that.

Dr. Aiello's testimony concluded that each of his three hypotheses was possible, but he could not determine which possibility was most likely. He did, however, state that if Ohio had changed its case decision from "indicated" to "substantiated," that would support the conclusion that the sexual abuse never happened. Finding of fact 97, therefore, attributes Dr. Aiello's inability to render a definitive opinion

regarding which hypothesis was most likely to having incomplete information regarding the Ohio investigation and points out additional information, not known to Dr. Aiello at the time of his testimony, that tends to support "hypothesis B" more than the other possibilities.

Findings of fact 25, 90, and 97 show that the trial court considered defendant's evidence but did not find that it proved by the greater weight of the evidence that plaintiff sexually abused Lisa. These findings are supported by competent evidence and are, therefore, binding on appeal. Moreover, defendant does not challenge the trial court's findings that Lisa recanted her assertion that plaintiff inappropriately touched her, that the child medical examination performed by the Johnston County DSS "failed to corroborate that allegations of abuse and the minor child did not disclose any abuse during the interviews conducted as part of the CME," and that the Johnston County case alleging sexual abuse and neglect was dismissed. All these findings, in turn, support the trial court's ultimate finding that defendant failed to show by the greater weight of the evidence that plaintiff sexually abused Lisa.

Defendant additionally challenges several of the trial courts findings regarding plaintiff and defendant's fitness as parents and behavior during the proceedings, including: that

defendant's hostile and evasive demeanor is contrary to her contention that she has attempted to co-parent with plaintiff and more consistent with plaintiff's testimony that defendant has been hostile towards his efforts to form a meaningful relationship with the child; that defendant instituted the action in Ohio for the sole purpose of stopping plaintiff's custodial rights established in North Carolina; that plaintiff has maintained a steady and stable residence in North Carolina; that plaintiff has employed appropriate daycare for the child; that plaintiff has exercised appropriate discipline with the child; and that defendant is not likely to promote a healthy and meaningful relationship between the child and plaintiff.

All of these findings are supported by evidence in the record. Defendant simply argues that the trial court erred in overlooking certain evidence, in finding the plaintiff's testimony more credible, or in drawing certain inferences from the evidence. These arguments go to questions of the weight to be afforded evidence and evaluations of credibility -- questions that rest solely within the province of the trial judge. *Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) ("We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial. A trial judge passes upon the

credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." (internal quotation marks omitted)). "The fact that the trial judge believed one party's testimony over that of the other and made findings in accordance with that testimony does not provide a basis for reversal in this Court." *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986).

After having reviewed the record and considered defendant's arguments, we hold that the trial court's findings of fact are supported by competent evidence. Because defendant does not make any argument that the findings fail to support the trial court's conclusions of law, we turn to defendant's arguments regarding the best interests of the child.

## Best Interests of the Child

We review the trial court's determination regarding the best interests of the child for abuse of discretion. *Mason*, 190 N.C. App. at 230, 660 S.E.2d at 71. Here, the trial court found that it is in the best interests of Lisa for the parties to exercise joint legal custody and grant primary physical custody to plaintiff. The trial court based this decision, in part, upon its findings that:

> 31. The Defendant has previously denied visitation to the Plaintiff, and the Defendant has routinely sought to put up barriers to the Plaintiff's rights

> to exercise visitation and to be a meaningful part of the minor child's life.
>
> . . . .
>
> 104. In the event the minor child were to remain in the State of Ohio in the custody of the Defendant, the Defendant is not likely to promote a healthy and meaningful relationship between the minor child and the Plaintiff.

This Court has held that whether a parent is likely to follow custody and visitation orders and otherwise promote a healthy relationship with the other parent is a proper consideration when determining the best interests of a child:

> In exercising its discretion in determining the best interest of the child in a relocation case, factors appropriately considered by the trial court include but are not limited to: the advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.

*Ramirez-Barker v. Barker*, 107 N.C. App. 71, 79-80, 418 S.E.2d 675, 680 (1992), *disapproved of on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998).

Defendant argues, however, that this is not a relocation case because she has lived with Lisa in Ohio for many years, and, therefore, *Ramirez-Barker* does not apply. Defendant cites no authority in support of this contention, and we see no reason why the factors set forth in *Ramirez-Barker* cannot apply to this case. We are unwilling to accept defendant's implicit argument that it is immaterial in non-relocation custody cases whether a parent is likely to follow custody and visitation orders and otherwise promote a healthy relationship with the other parent.

Finally, defendant argues that the trial court abused its discretion in ignoring unrefuted expert testimony of Dr. Aiello and several other experts that plaintiff should only have supervised visitation of Lisa. However, these recommendations were predicated upon the possibility that plaintiff had sexually abused Lisa. The trial court found that the evidence failed to establish that plaintiff had sexually abused Lisa, and we have held that this finding was supported by competent evidence. Nevertheless, the trial court did not ignore the issues raised by the experts' testimony, specifically finding that regardless of the truth of the allegations, Lisa needs to continue to receive therapy to deal with the issues presented in her life. Under these circumstances, the trial court did not "ignore" the expert testimony.

The trial court found that Lisa has a meaningful relationship with plaintiff's family in North Carolina, that plaintiff demonstrated maturity and concern for the continuity in the child's education, plaintiff has steady employment and has maintained a steady and stable residence in North Carolina, and Lisa has succeeded in school in North Carolina. In contrast, the trial court found that defendant is unlikely to foster a meaningful relationship between plaintiff and Lisa were she to be awarded primary physical custody and has not demonstrated a genuine effort to co-parent with plaintiff. Under these circumstances, we cannot say that the trial court abused its discretion in awarding primary custody to plaintiff.

Affirmed.

Judges ROBERT C. HUNTER and McCULLOUGH concur.

Report per Rule 30(e).