JON (JAKE) PHELPS v. LISA B. PHELPS

No. 144PA93

(Filed 29 July 1994)

1. **Divorce and Separation § 350 (NCI4th)— child custody—father's age—not fundamental basis of court's decision**

    The trial judge's brief references to the ages of the parties in an oral statement and in her written order did not indicate that plaintiff father's age was a "fundamental" basis of her decision awarding custody of a child to defendant mother in light of all the other reasons given for that decision.

    **Am Jur 2d, Divorce and Separation §§ 974 et seq.**

2. **Constitutional Law § 89 (NCI4th)— equal protection—invidious discrimination—necessity for classification**

    The equal protection clause of the Fourteenth Amendment deals with invidiously discriminatory classifications, and there is no equal protection claim without some type of "classification" of an individual.

    **Am Jur 2d, Constitutional Law §§ 735 et seq.**

3. **Constitutional Law § 92 (NCI4th); Divorce and Separation § 350 (NCI4th)— child custody—court's comments about father's age—no equal protection violation**

    The statute the trial court follows in determining child custody, N.C.G.S. § 50-13.2(a), does not classify an older parent either on its face or in its application, and the trial court's passing comments about plaintiff father's age when determining the child's best interest in accordance with the statute did not constitute an unlawful classification in violation of plaintiff's equal protection rights.

    **Am Jur 2d, Constitutional Law §§ 784-801.**

4. **Constitutional Law § 92 (NCI4th); Divorce and Separation § 350 (NCI4th)— child custody—consideration of parent's age—no equal protection violation**

    Assuming *arguendo* that a parent's right to the custody of a child was fundamental, the trial court's consideration of a parent's age in determining custody between two natural parents did not violate equal protection since the consideration of all aspects

PHELPS v. PHELPS

[337 N.C. 344 (1994)]

of both parents' lives, including the effect of their ages upon the potential for continuity and stability in the life of the child, was necessary to promote the governmental interest of granting custody based on the best interest of the child.

**Am Jur 2d, Constitutional Law §§ 784-801.**

5. **Divorce and Separation § 337 (NCI4th)— child custody— court's comment about father's age—no presumption in favor of mother**

The trial judge's comments about the father's age in her oral statement explaining her decision to grant custody of a child to defendant mother and her mention of the ages of both parents in her written order did not create a presumption in favor of the younger mother in violation of N.C.G.S. § 50-13.2(a) where it is clear that the age factor was not given more weight than other factors in the trial judge's determination of the best interest of the child.

**Am Jur 2d, Divorce and Separation §§ 974 et seq.**

6. **Appeal and Error § 44 (NCI4th)— issue not addressed by parties—consideration by Court of Appeals**

Although an issue concerning the trial judge's comments on her duty to consider the testimony of a five-year-old child as related by adult witnesses was not addressed by either party on appeal to the Court of Appeals, the Court of Appeals could consider the effect of the comments as a matter of appellate grace pursuant to N.C.G.S. § 7A-32(c) and Appellate Rule 2.

**Am Jur 2d, Appeal and Error § 5.**

7. **Divorce and Separation § 352 (NCI4th)— child custody— hearsay statements—court's hesitancy to admit—limited weight**

The trial judge in a child custody case did not err by indicating that she found it "dangerous" to allow into evidence statements of parents relating what a child has said and by giving such statements limited weight where the judge recognized that such hearsay statements may be admitted under Rule 803, admitted such testimony in light of this rule, and acknowledged the admission of such evidence in her written findings of fact. The weight and credibility of such testimony was within the discretion of the trial court.

**PHELPS v. PHELPS**

[337 N.C. 344 (1994)]

### Am Jur 2d, Divorce and Separation § 975.

### Child's wishes as factor in awarding custody. 4 ALR3d 1396.

Justice WHICHARD did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of a unanimous panel of the Court of Appeals, 109 N.C. App. 242, 426 S.E.2d 294 (1993), remanding for a new trial a child custody and support order of Hunt (now Love), J., filed 30 April 1991 in District Court, Orange County, awarding sole custody of the child, Joshua Phelps, to the defendant-mother and granting substantial visitation rights to the plaintiff-father. Heard in the Supreme Court 14 March 1994.

*James T. Bryan III for plaintiff-appellee.*

*Glenn, Mills & Fisher, P.A., by William S. Mills, for defendant-appellant.*

MEYER, Justice.

Jake Phelps (plaintiff) married Lisa Phelps (defendant) on 9 September 1984, and on 26 May 1986, a son, Joshua Bryan Blumenthal Phelps, was born of the marriage. Plaintiff and defendant separated on 9 September 1988 and, after the separation, agreed upon an informal custody arrangement until the filing of this action by plaintiff on 5 September 1989. Defendant responded to plaintiff's complaint with a request for sole custody of the child. Although plaintiff had originally requested that a joint custody arrangement be ordered by the court, during the hearing he specifically requested that he be granted sole custody of the child.

The case was heard in April of 1991. The evidence indicated that both parties, while loving, caring, and fit parents, had some problems. There was evidence that plaintiff had a drinking problem and that his lifestyle, which involved staying up late and constant entertaining, might not be an appropriate one in which to raise a child. There was evidence that defendant had committed acts of infidelity. Judge Hunt addressed these problems, as well as others, in the oral statement she made to the parties in the courtroom and in her written order. Her legal conclusion that sole custody of Joshua should be awarded to

**PHELPS v. PHELPS**

[337 N.C. 344 (1994)]

defendant, with extensive visitation rights given to plaintiff, was based in part upon the following findings of fact:

6. That both parties are college educated and both parties are employed. Jake Phelps works at Duke University as director of the student union, making a monthly gross income of $3,441.00 and that Lisa Phelps works as a research associate with Duke University with gross income of $1,375.00 per month.

7. Each of the parties [is] in apparent good health. Jake Phelps being 55 years old, and Lisa Phelps being 33 years old.

8. Each of the parents loves Joshua and shows this affection appropriately; that each parent is a fit and proper person to have custody of this child.

9. The Court has considered carefully the question of joint custody, in spite of the fact that neither party seeks joint custody. Because of serious disagreements between the parties concerning the child raising issues, the Court finds as a fact that the placement of Joshua Phelps in joint custody of his parents is not appropriate in this case and is not in his best interest. It is not in Joshua's best interest that he be switched back and forth between the parties' respective residences each week.

10. The plaintiff has a stable home, a good job, is well respected in the community where he lives and in the community where he works. He has in the past had a substantially inhibiting alcohol problem and pursuant to his recognition of that situation he now is abstaining from the use of alcohol completely.

11. Certain actions of Lisa Phelps, while married to the plaintiff, have caused the plaintiff such a deep hurt and resentment and anxiety and profound rage, that he is unable to overcome his grief and anger to cooperate in a reasonable fashion with the mother of his son to promote the best interest of his son.

12. The lifestyle of the plaintiff in this action[] reflects his station in life, his employment and his maturity. This lifestyle, while it may be appropriate to the plaintiff in this action, . . . is a difficult lifestyle for a young child. Adjusting to the late hours, to the constant flow of guests, and the adult entertainment that is a solid part of plaintiff's home is not appropriate for the young child.

**PHELPS v. PHELPS**

[337 N.C. 344 (1994)]

13. The defendant has a small apartment that does have a separate bedroom for Joshua. The defendant did commit certain acts of infidelity that have created a chasm between the parties that cannot be breached at this time. Nevertheless, the defendant has made every effort to cooperate with the father of her child to reduce the arguments and the violent verbal confrontations between the parties.

14. The defendant has made extraordinary efforts to involve her child with other children in her neighborhood and to take her child on regular visits to educational and recreational activities. There is some evidence that the actions of certain friends of the defendant may be distressing to the child and this stress has been communicated to the father of the child.

15. There is some evidence that the defendant has distressed her son with hints or misunderstandings that she would leave this area and live far away from Joshua's father. All of this is denied by the defendant, who stated to the Court that she liked where she lived, she liked her job and she wanted to stay in this area and has no plans to move from here.

16. There is a conflict between the parties concerning the religious training of Joshua Phelps. Both parties agree that Joshua comes from a mixed marriage of Christian and Jew and both parties agree that that common heritage should be preserved and encouraged in the education of this young child. The disagreement between the parties is reflected in that the defendant mother wants Joshua raised as a Jew with considerable education and understanding of his Christian heritage. The plaintiff father prefers that the child be raised as a child in a Judaeo-Christian [sic] religious training.

17. The parties have serious differences concerning the education of young Joshua. The plaintiff father wants Joshua to attend the Carolina Friends School in Chapel Hill. This school is a Quaker oriented and supported, multi-ethnic private school. It is a school that is fairly unstructured and looks to the individual child's needs rather than a program oriented system. The defendant mother is very interested in raising Joshua in the Durham County Public Schools because she feels that the system is more structured, that it is more racially balanced and that it will be able to deal with the special needs of her child more effectively should that need occur.

Additional facts will be addressed as necessary to the understanding of a particular issue.

[1] Defendant first argues that the Court of Appeals erred in holding that a trial court is prohibited from considering the respective age of the parents in determining the custody of a child. The Court of Appeals stated in its opinion that it appeared "that age difference was one of the fundamental bases for the trial court's custody award" and that there is "no acceptable basis in law or reason for awarding custody simply to the youngest parent or party in a custody action." *Phelps v. Phelps*, 109 N.C. App. 242, 247, 426 S.E.2d 294, 297 (1993). We conclude that the Court of Appeals erred in determining that the trial court considered plaintiff's age as a "fundamental" basis for its decision and that the evidence does not support the Court of Appeals' decision that the trial court awarded custody to the defendant because she was the youngest parent.

At the conclusion of the custody hearing, Judge Hunt spent approximately eleven transcript pages explaining to the parties her decision to grant sole custody to defendant and factors that she had considered in reaching that decision. In the middle of this announcement, she made the following statement:

> One of the reasons, Mr. Phelps, I had to look at, there is just no way—as my eye doctor told me the other day, you know, time is working on your eye, lady. He didn't say age. He said time. But I think you have to take that into consideration. This is a young child, and you are not a young man, and I think it is important that this child be raised in one home. And that that home has to be the one that is apparently going to last the longest.

Other than the brief mention of defendant's and plaintiff's respective ages in the eleven-page written order, the above oral statement is the only mention of age that Judge Hunt made during the lengthy oral and written explanations of her decision. We do not believe that, in light of all the other reasons given for her decision, the above brief references to the ages of the parties indicates that a "fundamental" basis of Judge Hunt's decision was plaintiff's age.

[2] Nor do we conclude that Judge Hunt in fact "classified" plaintiff according to his age in violation of his equal protection rights. We note that while the Court of Appeals cited no authority for its decision that Judge Hunt's comment about age was impermissible, both parties have addressed this as a constitutional equal protection issue.

However, "[t]he equal protection guarantee . . . governs all governmental actions which *classify* individuals for different benefits or burdens under the law." John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 14.1, at 568 (4th ed. 1991) (emphasis added). "The equal protection clause of the Fourteenth Amendment prevents a state from making arbitrary classifications which result in invidious discrimination." *State v. Tatum*, 291 N.C. 73, 83, 229 S.E.2d 562, 568 (1976). Without some type of "classification" of an individual, there is no equal protection claim. *See Zablocki v. Redhail*, 434 U.S. 374, 391, 54 L. Ed. 2d 618, 634 (1978) (Stewart, J., concurring) ("The Equal Protection Clause deals not with substantive rights or freedoms but with invidiously discriminatory classifications.").

There are three ways to establish that an unconstitutional "classification," in violation of an individual's equal protection rights, has occurred. First, a statute may classify people for different treatment on its face. *See Strauder v. West Virginia*, 100 U.S. 303, 308, 25 L. Ed. 664, 666 (1880). Second, a law or statute may classify people through its application, such as when governmental officials administer the law with different degrees of severity to different persons who are described by some suspect trait. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373, 30 L. Ed. 220, 227 (1886); *Maines v. City of Greensboro*, 300 N.C. 126, 130, 265 S.E.2d 155, 158 (1980). Finally, an equal protection claim may potentially stand if the law in reality constitutes a device purposefully designed to impose different burdens on different classes of persons. *See Shaw v. Reno*, —— U.S. ——, ——, 125 L. Ed. 2d 511, 528 (1993); *Washington v. Davis*, 426 U.S. 229, 241-42, 48 L. Ed. 2d 597, 608-09 (1976).

[3] The statute the trial court follows in determining custody does not classify parents in any way. The statute provides:

An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. An order for custody must include findings of fact which support the determination of what is in the best interest of the child. Between the mother and father, whether natural or adoptive, no presumption shall apply as to who will better promote the interest and welfare of the child. Joint custody to the parents shall be considered upon the request of either parent.

N.C.G.S. § 50-13.2(a) (1987).

There is no classification of an older parent in the statute here, either on its face or in its application, nor is there any indication that the statute was created for the purpose of imposing different burdens on different classes of persons. The statute specifically states that there shall be no presumptions made as to which parent "will better promote the interest and welfare of the child." *Id.* As noted above, the trial judge in this case simply mentioned defendant's age as a factor in her decision along with the consideration of educational choices, religious choices, drinking problems of the plaintiff, etc. There is nothing to indicate that the ultimate decision of the judge turned on the age of plaintiff.

Further evidence that the statute does not classify older people in its application is the fact that judges have granted custody to grandparents over parents on numerous occasions. *Clark v. Clark,* 294 N.C. 554, 243 S.E.2d 129 (1978); *Phillips v. Chaplin,* 65 N.C. App. 506, 309 S.E.2d 716 (1983); *Campbell v. Campbell,* 63 N.C. App. 113, 304 S.E.2d 262, *disc. rev. denied,* 309 N.C. 460, 307 S.E.2d 362 (1983); *In re Custody of Edwards,* 25 N.C. App. 608, 214 S.E.2d 215 (1975); *In re Stancil,* 10 N.C. App. 545, 179 S.E.2d 844 (1971); *Brandon v. Brandon,* 10 N.C. App. 457, 179 S.E.2d 177 (1971). We conclude that a passing comment about a party's age, when determining a child's best interest in accordance with the statute, does not constitute an unconstitutional classification in violation of a party's equal protection rights.

[4] Assuming *arguendo*, however, that the trial judge did create a classification, implicating plaintiff's rights, when she mentioned plaintiff's age, we will consider if such classification violated plaintiff's equal protection rights.

In determining whether a challenged statute violates the Equal Protection Clause of the federal constitution by treating similarly situated persons differently, courts generally employ a two-tiered analysis. *Texfi Industries v. City of Fayetteville,* 301 N.C. 1, 269 S.E.2d 142 (1980). Under this analysis, a statute is subjected to the highest level of review, or "strict scrutiny," "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *White v. Pate,* 308 N.C. 759, 766, 304 S.E.2d 199, 204 (1983), citing *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312[, 49 L. Ed. 2d 520, 524] (1976); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1,

16[, 36 L. Ed. 2d 16, 33] (1973). For a statute to survive this level of constitutional review, the government must demonstrate that the classification created by the statute is "necessary to promote a compelling government interest." [*White v. Pate*, 308 N.C. at 766, 304 S.E.2d at 204]; *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980).

*In re Assessment of Taxes Against Village Publishing Corp.*, 312 N.C. 211, 221, 322 S.E.2d 155, 162 (1984), *appeal dismissed by Village Publishing Corp. v. N.C. Dep't of Revenue*, 474 U.S. 1001, 86 L. Ed. 2d 710 (1985).

The classification alleged to have been made here was based on age, which is not a "suspect" class for equal protection purposes. *See Gregory v. Ashcroft*, 501 U.S. 452, 470, 115 L. Ed. 2d 410, 430 (1991) ("This Court has said repeatedly that age is not a suspect classification under the Equal Protection Clause."); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313-14, 49 L. Ed. 2d 520, 525. However, the right to custody of one's child may be deemed a "fundamental right." *See Stankosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606 (1982) ("fundamental liberty interest of natural parents in the care, custody, and management of their child"). Assuming *arguendo* that plaintiff's right to the custody of his child was fundamental, we must determine if the consideration of a parent's age in determining custody between two natural parents is necessary to promote a compelling governmental interest.

The United States Supreme Court has held that "[t]he State . . . has a duty of the highest order to protect the interests of minor children, particularly those of tender years. . . . The goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest for purposes of the Equal Protection Clause." *Palmore v. Sidoti*, 466 U.S. 429, 433, 80 L. Ed. 2d 421, 425-26 (1984). We conclude that granting custody of a child based upon the best interest of a child is a governmental interest of the highest level. Next, we determine if consideration of a person's age, along with many other factors, is necessary to promote the governmental interest.

Trial courts are permitted to consider an array of factors in order to determine what is in the best interest of the child. The factors may include the consideration of constitutionally protected choices or activities of parents. For example, a parent has a constitutional right to enroll a child in the school of the parent's choosing, *Pierce v.*

*Society of Sisters*, 268 U.S. 510, 534-35, 69 L. Ed. 2d 1070, 1078 (1925), yet choices of parents regarding education may be considered in determining what is in the best interest of the child. A parent also has a fundamental constitutional right to religious freedom under the First Amendment, yet judges may consider the spiritual welfare of a child, as evidenced by the attendance of church or participation in religious activities, in reaching their decision on custody. *See Dean v. Dean*, 32 N.C. App. 482, 483-84, 232 S.E.2d 470, 471-72 (1972); *Custody of King*, 11 N.C. App. 418, 419, 181 S.E.2d 221, 221 (1971). We conclude that a trial court should also be allowed to consider a parent's age and its potential effect on the welfare of the child as a factor in its determination of what is in the best interest of the child.

It should be noted that the United States Supreme Court has on one notable occasion addressed the issue of what may not be the basis for determining what is in the best interest of the child. *Palmore v. Sidoti*, 466 U.S. 429, 80 L. Ed. 2d 421. In *Palmore*, the United States Supreme Court overturned a trial court's decision to grant custody to the father because the decision was based solely on the fact that the child's white mother had remarried a black man. In its decision, the Supreme Court noted that the "court [below] was entirely candid and made no effort to place its holding on any ground other than race." *Id.* at 432, 80 L. Ed. 2d at 425. There was no evidence in the opinion that the consideration of what was in the best interest of the child went beyond the fact that it would be better for the child to live in a single-race family than a mixed-race family. The Supreme Court held that basing a custody decision on this one consideration was unacceptable.

The case below differs from *Palmore* in two significant ways. First, in the case at hand, the trial court set forth many different reasons why sole custody of the child should be with the mother, including the fact that the father had a drinking problem, was unable to cooperate in a reasonable fashion with the mother, and participated in a lifestyle not appropriate for a young child. Second, *Palmore* also differs from our case because the singular consideration of the trial court that was at issue in *Palmore* focused on race. "A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race." *Id.* (footnote omitted). "The paradigm of its [Equal Protection Clause] violation is, of course, classification by race." *Zablocki v. Redhail*, 434 U.S. 374, 391, 54 L. Ed. 2d 618, 634 (Stewart, J., concurring). Race is unquestionably a "suspect class." Thus, the consideration of race by any court will be

held to a higher scrutiny than the consideration of age, which is not a "suspect class."

It is simple logic that all else being equal a fifty-five-year-old person has a shorter remaining life span than a thirty-three-year-old person. The consideration of continuity and stability in the life of a child will logically lead a judge to consider the age of a parent. We conclude that consideration of all aspects of both parents' lives, including the potential for continuity and stability, is necessary to promote the governmental interest of granting custody based on the best interests of the child.

[5] Holding that the trial court committed no error under the United States Constitution, we consider if the trial court violated the law of North Carolina. The Court of Appeals and plaintiff have attempted to characterize the court's statement about age as a presumption against older parents. N.C.G.S. § 50-13.2(a) states that "[b]etween the mother and father, whether natural or adoptive, no presumption shall apply as to who will better promote the interest and welfare of the child." We conclude that there was no presumption applied by the trial court in this case. In eleven pages of her oral statement explaining her custody decision, the judge mentioned the plaintiff's age only on that one occasion referred to previously. The only mention of age in the written order is when the respective age of both parents is set out in the findings of fact. Based on a review of the oral announcement of custody and the written order, it is clear that while age may have been a factor considered by the judge in determining the custody decision, it was not a presumption applied by the court in favor of the mother. There is no evidence that this factor was given any more weight than consideration of the plaintiff's drinking problem or the anger and hurt he feels toward his wife. These two latter factors were mentioned not only in open court, but were also specifically addressed in the written order.

N.C.G.S. § 50-13.2(a) and our case law require that when two parents have both been deemed fit, the court must make the decision of custody based on what is in the best interest of the child. *See Hinkle v. Hinkle*, 266 N.C. 189, 196, 146 S.E.2d 73, 78 (1965). " 'The welfare or best interest of the child, in the light of all the circumstances, is the paramount consideration which guides the court in awarding the custody of the minor child. It is "the polar star by which the discretion of the court is guided." ' " *Id.* at 197, 146 S.E.2d at 79 (quoting Robert E. Lee, 3 *North Carolina Family Law* § 244, at 21 (3d ed. 1963). The trial

judge is "entrusted with the delicate and difficult task of choosing an environment which will, in his judgment, best encourage full development of the child's physical, mental, emotional, moral and spiritual faculties." *In re Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982). It is undeniable that the age of a parent may somehow affect the welfare of a child. *See Clark v. Clark*, 294 N.C. 554, 574, 243 S.E.2d 129, 140-41 ("With judgmatical objectivity, . . . the judges have weighed a consideration which plaintiff [grandmother] obviously has not permitted herself to contemplate: Her life expectancy is less than defendant's [mother's], and it is not in the children's interest that the court ignore the possibility of plaintiff's disablement or death prior to the majority of one or more of them."). The comments made by the trial judge in this case did not create a presumption that a younger parent will be awarded custody but simply noted that age can be a factor in considering what is in a child's best interest. This observation was consistent with the statutory duty entrusted to trial judges in custody cases.

Defendant next argues that the Court of Appeals erred when it concluded that the trial judge improperly commented on her duty to consider the testimony of the five-year-old child as related by an adult witness, indicating she would give such testimony no weight.

During the trial, plaintiff attempted to enter into evidence, through the testimony of adult witnesses, hearsay statements the child had made. The trial judge, in overruling defendant's objection to such testimony, stated:

> Well, it's always been a huge problem especially with small children in any kind of custody case and when they get a little bit older, you can talk to them. But you can't talk to five year olds and I don't think it's proper to put them on the stand and cross examine them. And that's where the problem is that we would have to rely on what he has to say in a hotly contested custody case that he [father] says the child said about his mother. And, you know, that goes to the weight of the evidence, that's clear. . . .
>
> . . . .
>
> I have for some time believed [Rule] 803 probably would lead me—allow some of the testimony of children in, and I think, on some of the sex abuse cases that we're seeing makes it very clear that the Supreme Court is leaning too in that direction.
>
> I'm going to allow him to say, realizing that I probably am opening a keg of worms, and I will strike it immediately if it does

not rise to what I believe is implicit in Rule 803, especially those first three. It is a dangerous thing and I want Ms. Phelps to understand that and Mr. Phelps too, it is a dangerous thing for Judges to listen to what children—what you're quoting children as saying.

[6] First, defendant argues that, as this issue was not addressed by either party on appeal to the Court of Appeals, it was not properly before the Court of Appeals and should not have been ruled upon. We conclude that this argument is without merit. The North Carolina Rules of Appellate Procedure state:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C. R. App. P. 2.

In addition, N.C.G.S. § 7A-32(c) states:

> The Court of Appeals has jurisdiction, exercisable by one judge or by such number of judges as the Supreme Court may by rule provide, to issue the prerogative writs, . . . in aid of its own jurisdiction, or to supervise and control the proceedings of any of the trial courts of the General Court of Justice . . . . The practice and procedure shall be as provided by statute or rule of the Supreme Court, or, in the absence of statute or rule, according to the practice and procedure of the common law.

N.C.G.S. § 7A-32(c) (1989).

This Court has held that "the Court of Appeals, in the exercise of its general supervisory powers under G.S. 7A-32(c) or pursuant to App. R. 2, could consider on its own initiative [a] question . . . [not brought forward in briefs of parties] and give relief *as a matter of appellate grace.*" *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 288, 266 S.E.2d 812, 814 (1980) (footnote omitted). We conclude that the Court of Appeals could consider the effect of the trial court's comments "*as a matter of appellate grace.*"

[7] Finding that the Court of Appeals could consider the comments made by the trial court, we now address the propriety of such com-

ments. Contrary to the Court of Appeals' belief, we do not determine that the trial judge's comments indicate that she would give no weight to the statements allegedly made by the child to others. The trial judge's comments indicated that she did not feel that a five-year-old should be put on the witness stand and subjected to cross-examination. The trial judge went on to conclude that although a judge could allow hearsay testimony about statements the child had made, she found such practice "dangerous," indicating that she would consider such statements very carefully.

The trial judge's written order indicates that she did, in fact, consider the testimony relating the statements of the child to some extent. Finding of fact #15 states that the defendant has distressed her son with hints or misunderstandings that she would leave the area and live far away from Joshua's father. This finding is supported in part by testimony of the plaintiff, relating what his son had said to him on one occasion.

We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial. A trial judge "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). "[I]ssues of witness credibility are to be resolved by the trial judge. It is clear beyond the need for multiple citation that the trial judge, sitting without a jury, has discretion as finder of fact with respect to the weight and credibility that attaches to the evidence." *Smithwick v. Frame*, 62 N.C. App. 387, 392, 303 S.E.2d 217, 221 (1983). "The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal." *Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980).

We conclude that the trial judge in this case did not err by indicating that she found it "dangerous" to allow into evidence statements of parents relating what a child had said. The trial court recognized that, under Rule 803, such hearsay statements may be admitted and, in light of this rule, allowed such testimony in over the objection of defendant. Furthermore, the trial judge acknowledged the admission of such evidence in her written findings of fact. Although the trial court seems to have indicated a reluctance to give such testimony a great deal of weight, we conclude that the weight or credibil-

ity to be given such testimony was ultimately within the discretion of the trial court. We conclude that the statements of the trial court did not constitute error.

Finally, defendant notes that there were numerous assignments of error brought forward by plaintiff that were not addressed by the Court of Appeals. Defendant requests that we address these assignments of error in order to finalize this custody decision. We conclude that these assignments of error are not correctly before this Court for review because "[r]eview by the Supreme Court after a determination by the Court of Appeals, whether by appeal of right or by discretionary review, is to determine whether there is error of law in the *decision* of the Court of Appeals." N.C. R. App. P. 16(a) (emphasis added). Nevertheless, we have thoroughly reviewed the entire transcript, records, and briefs and have evaluated the additional assignments of error not specifically addressed by the Court of Appeals. We conclude that there is no merit to any of the additional assignments of error.

In conclusion, we hold that plaintiff's equal protection rights were not violated by the trial court's two brief references to the plaintiff's age and that it was not erroneous for the trial judge to indicate her hesitancy to allow into evidence hearsay statements of a five-year-old child or to give such statements limited weight. Upon a thorough review of the record, it is clear that the findings of fact made by the trial judge are supported by competent evidence and that the decision of the trial judge that sole custody of Joshua Phelps should be granted to his mother with liberal visitation rights granted to the father was supported by these findings of fact.

We reverse the decision of the Court of Appeals and remand the case to that court for further remand to the District Court, Orange County, for reinstatement of the custody order of Judge Hunt filed 30 April 1991.

REVERSED AND REMANDED.

Justice Whichard did not participate in the consideration or decision of this case.