PAMELA SUE MacLAGAN, Appellant/Cross-Appellee v. MAURY D. KLEIN,
Appellee/Cross-Appellant

No. COA95-732

(Filed 20 August 1996)

### 1. Divorce and Separation § 359 (NCI4th)— modification of custody—unfitness of custodial parent not required

It is not required that the person having custody under a previous order be found unfit or no longer able or suited to retain custody in order to modify the order so long as a substantial change in circumstances affecting the welfare of the child is found.

**Am Jur 2d, Divorce and Separation § 1014.**

### 2. Divorce and Separation § 372 (NCI4th)— child custody— substantial change in circumstances—sufficiency of evidence

Plaintiff's claim that there was no showing of a substantial change in circumstances affecting the health and welfare of the parties' child was without merit where there was evidence to support the trial court's findings that the child experienced anxiety and stress due to remarks made to her about her being a Jew by one or more children in the town where her mother moved; the child experienced stress and anxiety as a result of her exposure to two competing religions; plaintiff failed on occasion to cooperate and facilitate telephone communication between defendant and the child; the child suffered symptoms of physical illness possibly caused by stress related to her parents' conflict; plaintiff involved the child in the conflict between the parties; and, in the opinion of her therapist, the child was in need of therapy due to the stress and anxiety she was experiencing.

**Am Jur 2d, Divorce and Separation §§ 1010, 1011.**

**Religion as factor in child custody and visitation cases. 22 ALR4th 971.**

### 3. Divorce and Separation § 372 (NCI4th)— defendant's positive relationship with child—plaintiff's move—change in circumstances—finding based on other factors

There was no merit to plaintiff's contention that the court erred by admitting into evidence and basing its finding of a sub-

stantial change of circumstances upon evidence concerning plaintiff's move from Chapel Hill to Edenton, since plaintiff's move was not the basis for the court's determination that there had been a change in circumstances, and the court's findings with respect to changes which occurred since the move to Edenton were based on competent evidence and were sufficient to support the court's conclusion of a substantial change in circumstances.

**Am Jur 2d, Divorce and Separation § 1010.**

**4. Divorce and Separation § 340 (NCI4th)— defendant in charge of child's religious training—sufficiency of findings**

The trial court did not abuse it discretion in granting defendant father charge of the minor child's religious training and practice and requiring plaintiff's cooperation with respect thereto where the court found that the parties had agreed to rear their child in the Jewish faith; she had had a positive sense of identity as a Jew since she was three years old and had had substantial involvement with a synagogue in Durham; since her introduction into activities at the Methodist church in Edenton by plaintiff mother, she had experienced stress and anxiety as a result of her exposure to two conflicting religions; and the court's order revealed no impermissible expression of preference by the trial court for one religion over another.

**Am Jur 2d, Divorce and Separation § 1011.**

**Religion as factor in child custody and visitation cases. 22 ALR4th 971.**

**5. Evidence and Witnesses § 785 (NCI4th)— evidence excluded—similar evidence before court—document mistakenly offered into evidence and withdrawn—cross-examination not allowed**

Defendant was not prejudiced by the exclusion of examination of a minor child's therapist with respect to a conference in which plaintiff allegedly made statements regarding her motives in moving away from Chapel Hill, since evidence of similar import was before the court; nor was defendant prejudiced by the trial court's denial of his request to be permitted to recross-examine plaintiff about a document which she had offered into evidence but later withdrew before the document had been admitted, since it was apparent that the document had been offered into evidence

MacLAGAN v. KLEIN

[123 N.C. App. 557 (1996)]

by mistake and had been withdrawn when the mistake was discovered.

**Am Jur 2d, Appellate Review § 759.**

6. **Divorce and Separation § 372 (NCI4th)— plaintiff as fit parent—no specific finding made—sufficiency of findings to support conclusion**

The trial court made amply sufficient findings to support its conclusion that circumstances had substantially changed since the previous custody order which affected the health and welfare of the child so that a modification of the prior order would be in her best interests, and, although the court made no specific finding as to plaintiff's fitness, it had found plaintiff to be a fit and proper person to have custody in two prior custody orders and made no finding in the present order that plaintiff was no longer a fit person to have custody; therefore, the court's findings were sufficient to support its conclusion that the child's best interests would be served by awarding joint custody to plaintiff and defendant.

**Am Jur 2d, Divorce and Separation § 1011.**

Appeal from order entered 8 December 1994 by Judge Lowry Betts in Orange County District Court. Heard in the Court of Appeals 19 March 1996.

*Donna Ambler Davis, P.C., by Donna Ambler Davis, for plaintiff-appellant/cross-appellee.*

*Northen, Blue, Rooks, Thibaut, Anderson & Woods, L.L.P., by Charles T.L. Anderson and Carol J. Holcomb, for defendant-appellee/cross-appellant.*

MARTIN, John C., Judge.

Plaintiff-mother and defendant-father appeal from an order awarding them joint custody of their minor child, Ashley Danien Klein, who was born on 29 June 1988. The parties have never been married to each other, but cohabitated for over two years, and defendant has legitimated the child. The relevant portions of the protracted and acrimonious procedural history of the case are summarized below.

On 11 May 1992, after a custody evaluation was completed by a Dr. John Looney, Director of the Division of Child and Adolescent Psychiatry at Duke University, the trial court entered a consent order in which it found and concluded, *inter alia*, that both parents are fit and proper persons to have custody of the minor child, but that it was in Ashley's best interest for plaintiff-mother to have custody. The court then: (1) awarded custody to plaintiff; (2) ordered that plaintiff consult with defendant with respect to all major decisions involving the child's education and health reasonably in advance of such decisions, and if the parties could not reach an agreement, they were to seek the advice of the child's therapist, Dr. Barbara Hawk, who would attempt to facilitate an agreement; and (3) provided for a visitation schedule for defendant with Ashley including approximately five days out of every two weeks, periods of summer and other visitation, and Jewish holidays. Defendant, who is Jewish, and plaintiff, who is not Jewish, had agreed prior to Ashley's birth that their child would be reared in the Jewish faith.

After the consent order was issued, plaintiff unilaterally terminated Ashley's therapy with Dr. Hawk, stating in a letter dated 17 July 1992 that she felt it best for all concerned, and especially for Ashley, that the child see another therapist. On 3 August 1992, defendant filed a motion seeking, *inter alia*, that he be awarded custody of Ashley due to a substantial change in circumstances adversely affecting the child. The specific grounds alleged by defendant were plaintiff's: termination of Ashley's therapy with Dr. Hawk; announced intention to relocate to impair defendant's visitation with Ashley; refusal to cooperate with defendant in parenting and particularly in raising Ashley in the Jewish faith; and inability to separate her personal conflicts with defendant from the exercise of judgment as to Ashley's best interests.

While defendant's motion was pending, plaintiff took a job as a teacher in the Bertie County School System and relocated with the child from Chapel Hill, North Carolina to Edenton, North Carolina. By letter sent 23 August 1992, plaintiff advised defendant that she and Ashley were relocating, and that defendant's pick-up for visitation should be exercised in Edenton, North Carolina. Plaintiff moved, with Ashley, to Edenton on the following day, 24 August 1992. Plaintiff subsequently testified that her relationship with defendant had no bearing on where she searched for a job, and that she would have been happy to have been able to acquire a job that did not require her and Ashley to relocate. After August 1992, defendant drove to and from Edenton each week to exercise his visitation with Ashley.

MacLAGAN v. KLEIN

[123 N.C. App. 557 (1996)]

At a hearing on defendant's motion for change of custody, Dr. Looney testified that, in his opinion, plaintiff's behavior since the court's 11 May 1992 consent order demonstrated her inability to separate her conflict with defendant from what is in the best interest of the child, and that Ashley's interest would now best be served by defendant having custody. However, on 5 March 1993, the trial court found and concluded that plaintiff's move to Edenton was done in good faith for economic reasons and not for the purpose of thwarting or interfering with defendant's visitation with Ashley or Ashley's religious training, that Ashley's best interests were served by plaintiff retaining custody, but that the move to Edenton constituted a sufficient change in circumstances to modify the visitation schedule. The trial court denied defendant's motion for change of custody, but modified the previous order with respect to visitation.

On 27 May 1993, plaintiff filed a motion to amend the visitation schedule, alleging that the current schedule interrupted Ashley's kindergarten attendance. In response, defendant asserted that he had, based upon the recommendation of Ashley's therapist, made arrangements to rent a residence in Edenton so that the existing visitation schedule would not interrupt Ashley's school schedule or attendance. Defendant also alleged that plaintiff had failed and refused to consult with him regarding Ashley's school enrollment and was in violation of the prior consent order. He also contended that by enrolling Ashley in a "year round" school, plaintiff had jeopardized defendant's planned period of summer visitation.

By order dated 24 August 1993, the trial court concluded that plaintiff had not carried her burden of proving that Ashley's attendance of kindergarten from both her mother's home and her father's leased residence in Edenton, and visits with her father to Chapel Hill, would adversely affect her. The court made a minor modification as to the time and place of visitation exchanges, and ordered the parties to meet with Paula Browder, Ashley's therapist, to monitor their conflict and develop co-parenting skills.

Between the fall of 1992 and summer of 1993, Ashley occasionally attended a Methodist church in Edenton with her grandmother and sometimes with her mother. Subsequent to the summer of 1993, Ashley's participation in events at the church increased and included regular attendance of Sunday School, a weekly fellowship/choir program, and Vacation Bible School in the early summer of 1994.

On 5 May 1994, defendant filed another motion in the cause alleging a substantial change in circumstances and requesting a modification of the trial court's prior custody award. Defendant based his motion on the following grounds: plaintiff's initiation of active religious worship with Ashley at a Christian church and the resulting conflict in Ashley's mind about her personal and religious identity; Ashley being teased as "a Jew" at her school and the lack of other Jewish children or a Jewish community in Edenton; a conflict between Ashley's school attendance in Edenton and the celebration of Jewish holidays with her synagogue in Durham; and plaintiff's failure to act so as to reduce the difficulty and stress related to Ashley's visitation with defendant and transfers between plaintiff and defendant.

At hearings on the motion conducted in July and August 1994, the evidence included testimony by Paula Browder that Ashley was suffering from increased anxiety, confusion, and stress over the past year due to travel between two households, her parents' inability to communicate with each other, and from having to operate in two unrelated worlds and communities. Ms. Browder further testified that, in her opinion, the increased stress was the cause of headaches and stomachaches of which Ashley had complained, and that plaintiff's incorporation of Ashley into church activities was creating confusion as to Ashley's self-concept and self-identity. Ms. Browder stated that Ashley had talked about worries about pleasing both parents each of whom wanted her to be of their own religious faith, and that Ashley expressed a need to be loyal to both and be Jewish when she was with her father and Christian when she was with her mother. Ms. Browder also stated that Ashley had told her at different times that she wished she could build a synagogue for her father and a church for her mother. Ms. Browder further testified that it was her observation that plaintiff has a pattern of obstructing Ashley's relationship with defendant, that she felt plaintiff was undermining Ashley's training in Judaism, that plaintiff was often unilaterally making decisions for Ashley rather than co-parenting with defendant, and that, because of a lack of co-parenting, defendant does not cooperate when activities about which he was not consulted are planned for Ashley during his visitation time with her. As a result, Ashley feels that her father does not support her activities and is not interested in what she wants to do.

In addition, Ms. Browder stated that defendant "may be pushing Ashley too hard about remembering she's Jewish now that

Christianity has been introduced," and that it would be best for Ashley if she were raised in one faith. As to Ashley being "teased" by other children about being Jewish, Ms. Browder stated that Ashley had mentioned this in therapy sessions, that plaintiff had stated that she knew of only one incident when this occurred, and that plaintiff was not happy about the incident and had checked into it. Ms. Browder also interpreted a tape of a telephone conversation between Ashley and defendant and expressed her opinion that plaintiff had interfered with and distracted Ashley from talking to her father by carrying on a one-sided conversation with Ashley while she was on the phone. She further stated that, in her opinion, Ashley was put in an awkward position of having to relay messages between her parents because plaintiff refused to get on the phone when defendant asked to speak to plaintiff, and that Ashley feels her parents cannot directly communicate with each other. The court also heard testimony from defendant that he experienced interference or a lack of cooperation from plaintiff on about half of the occasions when he spoke with Ashley on the telephone due to noise, interruptions, etc.

Ms. Browder further testified that Ashley has a good relationship with both parents, and that, in her opinion, apart from consideration of religious aspects or either party's relocation, Ashley's best interests would be served by residing in one community in close proximity to both parents, and that she should spend an equal amount of time with both parents. When asked specifically for her opinion of who would be the better parent to have custody of Ashley, Ms. Browder expressed a preference that Ashley's custody not be placed solely with one parent, but felt that, if custody were to be granted to one parent, defendant would be the better parent to have custody.

The court also heard from Dr. Beth Kurtz-Costes, an assistant professor of psychology at the University of North Carolina at Chapel Hill conducting research examining parental influences on children's development. Dr. Kurtz-Costes testified that she had been asked to view a videotape of an interaction between a mother and her child and to give her opinions of the videotape. Dr. Kurtz-Costes further stated that she had not been told which party requested her to view the tape. The videotape, made by an acquaintance of plaintiff, depicted an occasion when defendant came to pick Ashley up after Ashley had earlier in the week been diagnosed and treated for chicken pox. Plaintiff stated that she had requested her acquaintance to make the videotape so there would be no question that she was in compliance with the trial court's order, and to show that she was "try-

ing to make the transition best for Ashley." Dr. Kurtz-Costes testified that, though there were some interchanges that were very appropriate, she was of the opinion that plaintiff's conduct contributed to Ashley's stress by sending strong messages or cues conveying negative sentiments about Ashley leaving with her father, that plaintiff was powerless to prevent Ashley from leaving due to the court order, and that plaintiff was "creating a situation for her daughter of it's you and me against them."

On 8 December 1994, the trial court entered an order concluding as a matter of law that there had been a substantial change in circumstances affecting the health and welfare of the minor child, and that it was in Ashley's best interest that the prior custody order be modified. The court based its conclusions of law on findings of fact including: that Ashley complained of stomachaches in November and December 1993 for which no physiological cause was identified, and which her physician described as "possibly stress related due to the transition between parents who are not on good terms with each other"; that the parties agreed, as admitted by plaintiff, to rear Ashley in the Jewish faith; that Ashley has had substantial involvement with the Judea Reform Congregation Synagogue in Durham and the Durham-Chapel Hill Jewish community since birth, and the self-concept she derives from this association is vital to her mental well being; that Ashley is experiencing stress and anxiety due to her exposure to two conflicting religions, and this is having a detrimental effect on her emotional well being and her relationship with the Jewish religious community in Chapel Hill; that there is evidence that one or more children in Edenton have made remarks to Ashley about her Jewishness, causing Ashley to experience anxiety and stress; that plaintiff has not attended counselling sessions with Paula Browder as agreed and ordered in the court's 24 August 1993 order, and has expressed a reluctance to schedule or continue such sessions; that defendant has regularly and consistently taken Ashley to see Paula Browder and has himself met individually with Ms. Browder to enhance his parenting and his relationship with Ashley; that plaintiff has involved Ashley in the parties' conflict and suggested to Ashley that she become an advocate for plaintiff's position; that plaintiff has, on occasion, failed to cooperate with and facilitate telephone communication between Ashley and defendant, and has involved Ashley in the conflict by communicating to defendant through Ashley; that Ashley has had a positive sense of identity as a Jew since she was three years of age and interference with her worship as a Jew and fel-

lowship with other Jews will adversely impact her emotional well-being; that Ashley's circumstances have so changed that her welfare has been and will be adversely affected unless custody is modified; that defendant is a fit and proper person to have shared custody of Ashley; and that it is in Ashley's best interest that she be placed in the joint custody of plaintiff and defendant subject to certain terms and conditions.

The trial court awarded custody of Ashley to plaintiff and defendant, and ordered, *inter alia*: that Ashley continue her enrollment in the Edenton public schools until otherwise ordered by the court; that Ashley reside alternately with each parent and be exchanged according to a monthly calendar devised by the court; that plaintiff be in charge of Ashley's social activities such as swim, dance and/or gymnastic lessons, but that no such activities shall be scheduled on days when defendant and Ashley are in Chapel Hill, unless defendant agrees; that defendant be in charge of Ashley's religious training and practice, and that plaintiff cooperate in and abide by defendant's directives regarding religious training and practice; and that Ashley continue in therapy with Paula Browder until otherwise ordered by the court. Both plaintiff and defendant appeal.

## Plaintiff's Appeal

A motion to modify a court's prior award of custody of a minor child cannot be granted "until it is determined that (1) there has been a substantial change in circumstances affecting the welfare of the child; and (2) a change in custody is in the best interest of the child." *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 77, 418 S.E.2d 675, 678 (1992) (citations omitted). Any such modification must be supported by findings of fact based on competent evidence "that circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified." *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E.2d 140, 144 (1969). "[T]he party moving for such modification has the burden of showing such change of circumstances." *Tucker v. Tucker*, 288 N.C. 81, 87, 216 S.E.2d 1, 5 (1975). "However, there is no burden of proof on either party on the 'best interest' question." *Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679.

A trial judge "who has the unique opportunity of seeing and hearing the parties, witnesses and evidence at trial, is vested with *broad* discretion in cases concerning the custody of children." *In re Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982). Moreover, a trial court's

"findings of fact are conclusive on appeal if there is any competent evidence to support them, even though the evidence might sustain findings to the contrary, and even though some incompetent evidence may also have been admitted." *Pritchard v. Pritchard,* 45 N.C. App. 189, 196, 262 S.E.2d 836, 840 (1980).

In this case, the trial court made numerous findings of fact as to circumstances affecting the welfare of the minor child, including the finding that her circumstances "have so changed that her welfare has been and will be adversely affected unless the custody provision is modified." By the first question presented in plaintiff-appellant's brief, in support of which she lists thirty-two separate assignments of error, plaintiff attacks certain of the court's findings as not reflective of a substantial change in circumstances. She argues that the trial court erred in concluding there was a substantial change in circumstances directly affecting the health and welfare of the minor child so as to warrant a modification of the prior custody order. We disagree.

[1] Plaintiff first argues that defendant's positive relationship with Ashley is not a substantial change in circumstances absent evidence and a finding that plaintiff's fitness as a custodial parent has changed. This argument is sophistic. First, we note that to modify a prior custody order, it is not required that the person having custody under the previous order be found unfit or no longer able or suited to retain custody so long as a substantial change in circumstances affecting the welfare of the child is found. *See* 10 Strong's N.C. Index 4th *Divorce and Separation* § 359 (1991). Moreover, the court's findings with respect to defendant's relationship with Ashley do not appear to us to have been the basis for its conclusion that there had been a substantial change in circumstances affecting her welfare.

[2] Plaintiff also asserts that there is insufficient evidence to support the trial court's findings: that Ashley has experienced anxiety and stress due to remarks made to her about her Jewishness by one or more children in Edenton; that Ashley has experienced stress and anxiety as a result of her exposure to two competing religions; and that plaintiff has failed on occasion to cooperate and facilitate telephone communication between defendant and Ashley. Plaintiff further contends that such findings are insufficient to constitute a substantial change in circumstances.

Our examination of the record reveals competent evidence to support these findings of the trial court and the court's conclusion that there has been a substantial change in circumstances affecting

the welfare of the minor child. In addition to the findings contested above, the record contains additional evidence tending to show a change in circumstances, including: that Ashley has suffered symptoms of physical illness possibly caused by stress related to her parents' conflict; that plaintiff has involved Ashley in the conflict between the parties; and that, in the opinion of her therapist, Ashley is in need of therapy due to the stress and anxiety she is experiencing. In sum, we find plaintiff's claim that there was no showing of a substantial change in circumstances affecting Ashley's health and welfare to be without merit.

**[3]** Plaintiff next contends that the trial court erred by admitting into evidence and basing its finding of a substantial change of circumstances upon evidence concerning plaintiff's move to Edenton. Initially, we note from our review of the trial court's order, no findings which would relate plaintiff's move to Edenton to its legal conclusion that a substantial change in circumstances has occurred since the previous custody order. The court's findings of fact with respect to changes which have occurred *since* the move to Edenton, however, are based on competent evidence in the record and are conclusive "even though there is evidence to the contrary, or even though some incompetent evidence may have been admitted." *In re McCraw Children*, 3 N.C. App. 390, 392, 165 S.E.2d 1, 3 (1969). Such findings support the court's conclusion of a substantial change in circumstances. Accordingly, we find this argument of plaintiff to be without merit.

Plaintiff has referred to numerous other assignments of error following the first question stated in her brief; however, we are unable to ascertain that any reason or argument has been stated, or authority cited, in support of those assignments of error. Accordingly, pursuant to N.C.R. App. P. 28, we deem these remaining assignments of error to be abandoned. Nevertheless, we have examined all of the court's findings of fact identified in the assignments of error listed under plaintiff's first argument and find competent evidence in the record to support each of them. The court's findings, in turn, support its conclusions of law. Plaintiff's first argument is overruled.

**[4]** In plaintiff's second argument, she asserts that, assuming *arguendo* there was a substantial change of circumstances allowing a modification of the custody order, the trial court abused its discretion in ordering that defendant be in charge of the child's religious training because, in so doing, the court "erroneously involved itself in the

religious decisions of the parties" in violation of the Establishment Clause of the First Amendment and plaintiff's free expression of her religious beliefs. We reject her argument.

"Trial courts are permitted to consider an array of factors in order to determine what is in the best interest of the child." *Phelps v. Phelps*, 337 N.C. 344, 352, 446 S.E.2d 17, 22, *reh'g denied*, 337 N.C. 807, 449 S.E.2d 750 (1994). "The trial judge's decision shall not be upset on appeal absent a clear showing of abuse of discretion." *Benedict v. Coe*, 117 N.C. App. 369, 376, 451 S.E.2d 320, 324 (1994) (citation omitted). Moreover, the factors examined by the court "may include the consideration of constitutionally protected choices or activities of parents." *Phelps*, 337 N.C. at 352, 446 S.E.2d at 22. Specifically as to the consideration of religion in child custody cases, this Court has previously stated that "although a court may consider a child's spiritual welfare as part of the best interests determination, a court may not base its findings on its preference for any religion or particular faith." *Petersen v. Rogers*, 111 N.C. App. 712, 718, 433 S.E.2d 770, 774 (1993), *reversed on other grounds*, 337 N.C. 397, 445 S.E.2d 901 (1994). The general rule is that "a limited inquiry into the religious practices of the parties is permissible if such practices may adversely affect the physical or mental health or safety of the child, and if the inquiry is limited to the impact such practices have upon the child." *Id.* at 719, 433 S.E.2d at 775.

Plaintiff contends the trial court abused its discretion by granting defendant sole decision-making power as to the child's religious training because, in so doing, the court allegedly stated "an explicit preference for the father's Jewish faith as opposed to the mother's Christian religion." Plaintiff also refers us to cases from other jurisdictions for the proposition that courts must maintain impartiality regarding religious beliefs in child custody cases. *See, e.g., Ex parte Hilley*, 405 So. 2d 708 (Ala. 1981); *Compton v. Gilmore*, 560 P.2d 861 (Idaho 1977); *Kirchner v. Caughey*, 606 A.2d 257 (Md. 1992); *Fisher v. Fisher*, 324 N.W.2d 582 (Mich. Ct. App. 1982); *Munoz v. Munoz*, 489 P.2d 1133 (Wash. 1971). However, these cases also illustrate that factual and legal circumstances can justify custodial restrictions upon religious activities in certain cases. As the *Munoz* court stated:

> Thus, the rule appears to be well established that the courts should maintain an attitude of strict impartiality between religions and should not disqualify any applicant for custody or restrain any person having custody or visitation rights from tak-

ing the children to a particular church, *except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child.*

*Munoz*, 489 P.2d at 1135 (emphasis added). *See also Kirchner v. Caughey*, 606 A.2d at 577 (holding that the "clear and affirmative showing" referred to in *Munoz* requires a factual finding of a causal relationship between the religious practices and the actual or probable harm to the child). The trial court in *Munoz* had awarded custody of the parties' children and sole control over the children's religious training to the mother, who was a Mormon, and specifically prohibited the father, who was Catholic, from taking his children to any Catholic services while the children were visiting him. The Supreme Court of Washington subsequently struck the trial court's order because it found no affirmative showing that the children were emotionally upset or emotionally disturbed by attending two churches, or that exposure to two religious beliefs had, or would have, any adverse effect on the children. *Munoz*, 489 P.2d at 1135-36.

The present case, however, presents a different situation. Here, the trial court found: the parties had agreed to rear the minor child in the Jewish faith; the child has had a positive sense of identity as a Jew since she was three years old and has had substantial involvement with the Judea Reform Congregation Synagogue in Durham; and since her introduction into activities at the Edenton United Methodist Church, the child has experienced stress and anxiety as a result of her exposure to two conflicting religions which have had a detrimental effect on her emotional well-being. These findings are supported by the evidence and demonstrate affirmatively a causal connection between the conflicting religious beliefs and a detrimental effect on the child's general welfare. Accordingly, the findings support the trial court's order granting defendant charge of Ashley's religious training and practice and requiring plaintiff's cooperation with respect thereto.

In addition, contrary to plaintiff's claim, we discern no impermissible expression of preference for one religion over another on the part of the trial court. The court's findings make it clear that its order giving defendant charge of the child's religious training is not based on a preference for Judaism, but rather arises from the fact that the child has had a positive Jewish self-identity since she was three years of age, and the fact that the parties had an undisputed agreement "to raise Ashley Danien Klein in accordance with the tenents [sic] of

Defendant's Jewish faith and heritage." We also reject plaintiff's claim that the order infringes upon her "constitutional right to the free expression of her religious beliefs." The trial court's order contains nothing which would prohibit plaintiff from following and/or engaging in the beliefs and practices of her chosen religion. The court properly limited its inquiry, and its order, to the detrimental impact of conflicting religions on the health and welfare of the child. Plaintiff's assignments of error are overruled.

## Defendant's Appeal

[5] Defendant's first contention in his cross-appeal is that the trial court erred in excluding examination of Paula Browder, Ashley's therapist, with respect to a conference, on 2 June 1993, attended by plaintiff, plaintiff's counsel, plaintiff's psychologist, and Browder in which plaintiff allegedly made statements regarding her motives in moving away from Chapel Hill. At the hearing, plaintiff objected to the inquiry on the grounds that the statements were privileged. Defendant argues on cross-appeal that plaintiff's statements were not privileged and that the evidence was relevant to establish plaintiff's misrepresentation as to her real motivation for relocating from Chapel Hill to Edenton, which was to thwart defendant's contact with the minor child; to counter plaintiff's impeachment of Browder regarding Browder's testimony of other statements allegedly made by plaintiff that her relocation was to distance herself and the child away from defendant; and to counter plaintiff's assertion of surprise by this issue. Defendant made no formal offer of proof, but contends the substance of the evidence was apparent from the context within which the questions were asked. *See* N.C. Gen. Stat. § 8C-1, Rule 103 (a)(2).

Although the court excluded Ms. Browder's testimony as to the 2 June 1993 conference, it allowed her to testify as to other statements that plaintiff allegedly had given as a reason for relocating including, "slowing down the travel and the amount of visitation that was going on for Ashley," and laughing about how far she could get away from defendant. Thus, evidence of similar import was before the court and any error by the trial court in excluding Ms. Browder's testimony about plaintiff's statements at the 2 June 1993 conference was harmless. *See, e.g., Medford v. Davis*, 62 N.C. App. 308, 311, 302 S.E.2d 838, 840, *disc. review denied*, 309 N.C. 461, 307 S.E.2d 365 (1983) ("Error in the exclusion of evidence is harmless when other evidence of the same import is admitted."). Assuming, *arguendo*, the exclusion of Ms. Browder's testimony with respect to the 2 June 1993 conference was

error, defendant has not shown prejudice and this assignment of error is overruled.

Defendant next assigns error to the trial court's denial of his request to be permitted to recross-examine plaintiff about a document which she had offered into evidence, but later withdrew before the document had been admitted. "The scope of cross-examination rests largely in the discretion of the trial court, and its rulings will not be disturbed absent a clear showing of abuse or prejudice." *State v. Moorman*, 82 N.C. App. 594, 600, 347 S.E.2d 857, 860 (1986), *reversed on other grounds*, 320 N.C. 387, 358 S.E.2d 502 (1987) (citing *State v. Pinch*, 306 N.C. 1, 292 S.E.2d 203, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982)). Moreover, "after a witness has been cross-examined and reexamined, unless the redirect examination includes new matter, it is in the discretion of the judge to permit or refuse a second cross-examination . . . ." *Id.* From the context in which it was offered, it is apparent that the document, a letter to plaintiff from her former counsel, had been offered into evidence by mistake and had been withdrawn when the mistake was discovered. Thus, under the circumstances, we discern neither an abuse of discretion by the trial judge nor any prejudice to the defendant. Defendant's contention to the contrary is overruled.

[6] In his final argument, defendant claims the trial court erred by failing to make specific findings of fact as to issues which he contends were determinative of the controversy and thus were "ultimate facts" essential to support the court's conclusions and award of joint custody. Specifically, he argues that he presented substantial evidence which required the court to determine: whether plaintiff's pattern of behavior was intended to, and in fact did, alienate the minor child's affections from defendant; whether plaintiff had misrepresented facts in her testimony before the trial court; and whether plaintiff was a fit and proper person to have custody of the minor child. We find no merit in his argument.

"An order awarding joint custody or any other child custody award must include findings of fact that support a determination of the child's best interest." *Church v. Church*, 119 N.C. App. 436, 438, 458 S.E.2d 732, 733 (1995). "However, the trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute." *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990), *affirmed*, 328 N.C. 324, 401 S.E.2d 362 (1991). "This

is a discretionary matter with the court which can only be disturbed upon 'a clear showing of abuse of discretion.' " *Id.* (quoting *Dixon v. Dixon*, 67 N.C. App. 73, 76, 312 S.E.2d 669, 672 (1984)).

We hold that the trial court made amply sufficient findings to support its conclusion that circumstances had substantially changed since the previous custody order, which affected the health and welfare of the child, so that a modification of the prior order would be in her best interests. Although the court made no specific finding as to the plaintiff's fitness, it had found plaintiff to be a fit and proper person to have custody of the minor child in two prior custody orders and made no finding in the present order that plaintiff is no longer a fit person to have custody. Accordingly, we hold the court's findings sufficient to support its conclusion that the child's best interests will be served by awarding joint custody to plaintiff and defendant, and defendant's assignments of error are overruled.

The trial court's order awarding plaintiff and defendant joint custody of their minor child, according to the terms and conditions stated therein, is in all respects affirmed.

Plaintiff's appeal—Affirmed.

Defendant's appeal—Affirmed.

Judges JOHNSON and McGEE concur.